[Cite as *State ex rel. Arberia, L.L.C. v. Indus. Comm.*, 2014-Ohio-5351.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Arberia, LLC, | : | |
| Relator, | : | |
| v. | : | No. 13AP-1024 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on December 4, 2014

*Habash & Reasoner LLC, Dennis Behm, Stephen J. Habash* and *David P. Everett,* for relator.

*Michael DeWine*, Attorney General, and *Colleen C. Erdman*, for respondent Industrial Commission of Ohio.

*Garson Johnson LLC,* and *Grace A. Szubski,* for respondent Doloreza Taluri.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

TYACK, J.

{¶ 1} Arberia, LLC filed this action in mandamus seeking a writ to compel the Industrial Commission of Ohio ("commission") to vacate its orders for loss of use with respect to Dhimitraq Taluri. For the following reasons, we deny Arberia LLC's request for a writ of mandamus.

{¶ 2} In accord with Loc.R. 13(M) of the Tenth District Court of Appeals, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision, appended hereto, which contains detailed findings of fact and conclusions of

law.  The magistrate's decision recommends that we allow an award for loss of use but return the case to the commission for it to re-compute the number of weeks of scheduled loss compensation due to Taluri's widow.

{¶ 3}  Arberia, LLC has filed objections to the magistrate's decision.  The commission has likewise filed objections, contesting the issue of re-computing the size of the award.  Counsel for Doloreza Taluri, Dhimitraq Taluri's widow, has filed a memorandum in response to the objections filed by Arberia, LLC.  Counsel for the commission has filed a similar document.  Following oral argument before a panel of this court, the case is subject to a full, independent review.

{¶ 4}  Taluri died following a fall on October 28, 2011.  He was 63 years old and fell about 30 feet while performing demolition work on a roof.  He landed on his head. When approached, his pupils were found to be dilated.  Blood and brain matter were coming from his nose.  He was suffering from massive hemorrhages of his brain.  He also was found to have multiple skull fractures.  Taluri initially survived the fall but died four and one-half hours later at Grant Medical Center.  Death benefits were granted by the Bureau of Workers' Compensation ("BWC").

{¶ 5}  Counsel for his widow filed a motion asking for an award for loss of use of Taluri's arms, legs, eyes and ears pursuant to R.C. 4123.57(B).  The motion was supported by the pertinent hospital records.  Donald Cameron, M.D., reviewed the records and concluded that a loss of use of all body parts listed had in fact occurred.  BWC therefore granted the motion in its entirety granting a total of 1,225 weeks of permanent partial compensation.

{¶ 6}  Arberia, LLC, appealed and a district hearing officer ("DHO") affirmed the BWC's order.

{¶ 7}  Arberia appealed again and a staff hearing officer ("SHO") again affirmed. The full commission declined review, leading to this mandamus action.

{¶ 8}  There really is no debate that Taluri lost the use of all the body parts listed for the relatively brief period of time he survived between his fall and his death.  Death was not instantaneous, and for the time he survived, he had no control of body parts.

{¶ 9}  The objection on behalf of Arberia, LLC as to the fact of the loss of use is overruled.

No. 13AP-1024

{¶ 10} The objection filed on behalf of the commission as to the size of the loss of use award has merit. Our magistrate interprets R.C. 4123.60 as blocking the award made by the BWC, DHO and SHO. We do not interpret R.C. 4123.57(B) and 4123.60 in the same way.

{¶ 11} Taluri's widow filed a claim pursuant to R.C. 4123.57(B):

> When an award under this division has been made prior to the death of an employee all unpaid installments accrued or to accrue under the provisions of the award shall be payable to the surviving spouse, or if there is no surviving spouse, to the dependent children of the employee and if there are no such children, then to such dependents as the administrator determines.
>
> When an employee has sustained the loss of a member by severance, but no award has been made on account thereof prior to the employee's death, the administrator shall make an award in accordance with this division for the loss which shall be payable to the surviving spouse, or if there is no surviving spouse, to the dependent children of the employee and if there are no such children, then to such dependents as the administrator determines.

The magistrate found that the inclusion of the word severance precludes an award of permanent partial compensation as this was the only place in the statute where the word severance was used and must be given its literal meaning; that only if Taluri's limbs were completely removed from his body would he have qualified for an award. We do not agree with this interpretation of "severance" within R.C. 4123.57(B).

{¶ 12} The Supreme Court of Ohio has made clear that the type of injury Taluri suffered allows for the application of scheduled loss compensation under R.C. 4123.57(B). *See State ex rel. Moorehead v. Indus. Comm.*, 112 Ohio St.3d 27, 2006-Ohio-6364. William Moorehead suffered a fall causing a spinal cord injury which rendered him a quadriplegic. Mr. Moorehead never regained consciousness and died 90 minutes after the fall. As in this case, the widow applied for death benefits and for scheduled loss compensation pursuant to R.C. 4123.57(B). The Supreme Court found that Moorehead was entitled to scheduled loss benefits pursuant to the relevant statutes, R.C. 4123.60 and 4123.57(B).

No. 13AP-1024

{¶ 13} Taluri, like Moorehead, did not apply for scheduled loss compensation before his death. Neither Taluri nor Moorehead had their limbs severed but suffered physical injuries to the head and spine respectively resulting in a total loss of use. Moorehead's widow applied for compensation under the same exact language, "[w]hen an employee has sustained the loss of a member by severance, but no award has been made on account thereof prior to the employee's death" as Taluri's widow. R.C. 4123.57(B).

{¶ 14} We must find that compensation is payable for loss of a limb if it is proven that, for all practical purposes, the total and permanent loss of a limb has the same effect and extent as if the limb had been amputated or otherwise physically removed. *See Moorehead* and *State ex rel. Walker v. Indus. Comm.*, 58 Ohio St.2d 402, 403-04 (1979). *Moorehead* unequivocally shows that scheduled loss benefits may be awarded for limbs still attached when a decedent expires or else *Moorehead* would not have prevailed.

{¶ 15} An absolute interpretation that requires a limb to be physically severed was previously rejected by the Supreme Court of Ohio in *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166. *Alcoa* clarified that a loss of use can be compensable if there is a loss "for all practical purposes." *Id.* We find that R.C. 4123.57(B) is applicable to this case because it is so factually similar to *Moorehead*.

{¶ 16} We next examine R.C. 4123.60 to determine the size of the scheduled loss awarded pursuant to R.C. 4123.57(B). R.C. 4123.60 states, in the pertinent part:

> If the decedent would have been lawfully entitled to have applied for an award at the time of his death the administrator may, * * * award and pay an amount, not exceeding the compensation which the decedent might have received, but for his death, for the period prior to the date of his death, to such of the dependents of the decedent, * * * as the administrator determines in accordance with the circumstances in each such case, but such payments may be made only in cases in which application for compensation was made * * * within one year after the death of such injured or disabled person.

Arberia argues that R.C. 4123.60 limits the award of loss of use to one week, rather than the 1,225 weeks awarded by the commission, because the decedent only lived for four and one-half hours.

No. 13AP-1024

{¶ 17} R.C. 4123.60 does not limit a scheduled loss award to only the time that an injured applicant lives because such awards are allowed to be paid in one lump sum and are not restricted to the number of weeks an injured worker lives. The decedent was lawfully entitled to apply for a scheduled loss award before his death and was lawfully entitled to apply for a lump-sum payment before his death. The Ohio legislature has given the power for awarding payments to be commuted to a lump-sum payment. "The administrator of workers' compensation, under special circumstances, and when the same is deemed advisable for the purpose of rendering the injured or disabled employee financial relief or for the purpose of furthering his rehabilitation, may commute payments of compensation or benefits to one or more lump-sum payments." R.C. 4123.64(A).

{¶ 18} Ohio Adm.Code 4123-3-37 explicitly allows for lump-sum advancements of awards:

> (A) The administrator of the bureau of workers' compensation may commute an award of compensation to a lump sum payment when the administrator determines that the advancement is advisable for the purpose of providing the injured worker financial relief or for furthering the injured worker's rehabilitation.
>
> (1) The administrator may only grant a lump sum payment to an injured worker from an award of compensation made pursuant to section 4123.58 of the Revised Code or from division (B) of section 4123.57 of the Revised Code.

It is clear that Dhimitraq Taluri was entitled to apply for scheduled loss benefits under R.C. 4123.57(B) before his death. Ohio Adm.Code 4123-3-37 allows for such an award under R.C. 4123.57(B) to be granted in a lump-sum payment if the BWC determines that the advancement is advisable.

{¶ 19} R.C. 4123.60 does not restrict this award. The decedent was lawfully entitled to apply for the award and such an award may be granted in a lump sum by the BWC. The 1,225 weeks of compensation paid in a lump sum do not exceed compensation which the decedent *might* have received. R.C. 4123.60 would only restrict such awards if there were no dependents of the decedent, "the administrator may * * * award and pay an amount * * * to such of the dependents of the decedent." *See State ex rel. Estate of McKenney v. Indus. Comm.*, 110 Ohio St.3d 54, 2006-Ohio-3562. This is also true if the

application for compensation was not made within one year after the death of the disabled person. R.C. 4123.60.

{¶ 20} Scheduled loss awards are usually designed to be distributed on a weekly basis. The BWC may commute an award to a lump-sum payment. R.C. 4123.60 language that limits an award to "an amount, not exceeding the compensation which the decedent might have received, but for his death, for the period prior to the date of his death," only emphasizes the presumption that scheduled loss awards are normally distributed on a weekly basis. The special requirements and discretion of lump-sum payments, as well as limiting them to rewards granted under R.C. 4123.58 and 4123.57(B), clearly show that these are exceptions to the general practice of distributing payments on a weekly basis.

{¶ 21} Further, the awarding of loss of use benefits under R.C. 4123.57(B) is not duplicative of any death benefits. *State ex rel. PolyOne Corp. v. Indus. Comm.*, 10th Dist. No. 12AP-313, 2014-Ohio-1376, ¶ 9. "[T]he intent of R.C. 4123.59 is to compensate dependents for the "loss of support" resulting from the employee's death." *Id.*; citing *Fulton, Ohio Workers' Compensation Section* 11.3 at 531 (4th Ed.2011).

{¶ 22} The Supreme Court of Ohio has reaffirmed that benefits for partial disability are akin to damages for work-related injuries rather than compensation for lost earning capacity. *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 42 Ohio St.2d 278, 282 (1975). *See also State ex rel. Miller v. Indus. Comm.*, 97 Ohio St.3d 418, 2002-Ohio-6664, ¶ 12 ("partial disability benefits have been compared to damages and are awarded irrespective of work capacity"); *State ex rel. Dudley v. Indus. Comm.*, 135 Ohio St. 121, 125 (1939) (Loss of sight was arbitrarily fixed and had nothing to do with impairment of earning capacity); *State ex rel. Kincaid v. Allen Refractories Co.*, 114 Ohio St.3d 129, 2007-Ohio-3758, ¶ 9.

{¶ 23} *McKenney* is distinguishable and does not alter partial disability awards being akin to damages rather than lost earning capacity. The widow of the deceased claimant was entitled to 850 weeks of scheduled loss compensation but the widow died before receiving the entire award after applying for a lump-sum payment. Her estate argued that it was entitled to a lump-sum payment of the remaining 844 weeks of the award yet to be paid when her husband died. The BWC denied the lump-sum payment and the Supreme Court agreed, finding that it was the dependent spouses' life, not the

deceased claimant's life, which the court should use to measure the amount of benefits to which the estate was entitled. *Id.* A distinction between partial disability awards and damages is a line that the *McKenney* decision draws; the dependent spouse, had she lived, would have been entitled to the entire award and could be awarded a lump sum, but her estate does not. Hence, *McKenney* is an example of how partial disability awards are akin to but not identical to damages.

{¶ 24} *McKenney* also conclusively shows that the number of weeks to measure a partial disability award is not measured by the claimant's life span but rather by that of their spouse, dependent children, or other dependents as the BWC determines. The Supreme Court affirmed the payments for the weeks the spouse survived her husband. The court did not limit the payment to the time that the injured claimant lived. "The plain language of R.C. 4123.57(B) makes it clear that the surviving spouse's entitlement to the loss of use benefits abates upon her death and no further benefits are payable." *McKenney* at 55.

{¶ 25} In the case at bar, Taluri's spouse is alive and entitled to "all unpaid installments accrued or to accrue under the provision of the award." R.C. 4123.57(B). This award accrues based on the surviving spouse's life and not the life of the claimant. This award can also be commuted to a lump sum. *See* again R.C. 4123.64(A) and Ohio Adm.Code 4123-3-37. This is not limited by the language of R.C. 4123.60. "If the decedent would have been lawfully entitled to have applied for an award at the time of his death the administrator may * * * award and pay an amount, not exceeding the compensation which the decedent *might* have received, but for his death, for the period prior to the date of his death." (Emphasis added.) It is clear that Taluri might have received a lump-sum loss of use award for his catastrophic injury.

{¶ 26} As stated earlier, partial disability compensation for loss of use does not indemnify claimants for their loss of earnings. It is irrelevant how many hours Taluri survived to collect an award because R.C. 4123.57(B) only requires that he would have been entitled to an award before he died. The medical evidence shows that Taluri was entitled to 1,225 weeks of scheduled loss award which the BWC could commute to a lump-sum payment. Taluri's dependent widow, being alive, is entitled to the full 1,225 weeks

No. 13AP-1024

lump-sum payment of the loss of use award and nothing in R.C. 4123.60 limits this payment.

{¶ 27} Arberia would have us rely on the concurrence in *Moorehead* in which only two justices argued that Moorehead's dependent widow was only entitled to one week of scheduled loss benefits under R.C. 4123.57(B). " I believe that Moorehead may be entitled to one week of scheduled loss benefits under R.C. 4123.57(B) to compensate for her husband's period of survival." *Moorehead* at ¶ 30. The concurrence relies on the *Mckenney* case which was decided a few months prior and is cited by the majority. "We did not agree that [Mrs.] McKenney was entitled to the entire award upon [Mr McKenney's] death. Scheduled loss benefits, like most other forms of workers' compensation, compensate for a loss of earning capacity." *Moorehead* at ¶ 29.

{¶ 28} We disagree with the reasoning of the concurring justices for two reasons. First, it is directly contrary to the holding in *Mckenney* which granted scheduled loss benefits not for the number of weeks that the employee lived but for the number of week the employee's dependent spouse lived. Second, as we have stated, the Supreme Court has repeatedly affirmed that benefits for partial disability are akin to damages for work-related injuries rather than compensation for lost earning capacity.

{¶ 29} As is evident, five justices of the Supreme Court did not sign on to the concurrence and repeatedly stated in the majority that additional requirements should not be grafted on to R.C. 4123.57(B) because the statute has no text imposing them. "We therefore cannot condone the commission's addition of a requirement that a worker survive for some extended period of time, left unspecified by the commission or the General Assembly, when considering the worker's entitlement to a scheduled loss benefit." *Moorehead* at ¶ 15. Likewise, we cannot add the requirement that schedule loss benefits be limited to the number of weeks an employee survives, when such a question is left unspecified by the General Assembly, and especially when such awards can be commuted to lump-sum payment.

{¶ 30} The majority in *Moorehead* also correctly cautioned the judiciary about imposing any additional requirements based on public-policy arguments. "Public-policy arguments relative to the requisites of scheduled loss benefits pursuant to R.C. 4123.57 are better directed to the General Assembly, including arguments that a specified time of

survival should be mandated after a paralyzing injury and that a worker be cognizant of his or her loss before loss-of-use benefits are payable." *Moorehead* at ¶ 19. It is clear that public-policy questions of the equability between two victims of the same industrial accident in which one survives for a few hours and the other that dies instantaneously should only be directed to the General Assembly. To impose such limitation would be to legislate from the bench.

{¶ 31} We, therefore, sustain the objections filed by the commission and Taluri.

{¶ 32} As a result of the above, we adopt the findings of fact contained in the magistrate's decision. We adopt the conclusions of law with respect to the issue of the fact of loss of use awards. We do not adopt the conclusions of law with respect to the conclusion that R.C. 4123.57(B) does not apply because the claimant did not suffer a loss by severance and with respect to the size of the award. As a result, we deny Arberia LLC's request for a writ of mandamus.

*Objections sustained; writ denied.*

DORRIAN, J., concurs.
KLATT, J., concurs separately.

KLATT, J., concurring separately.

{¶ 33} I agree with the majority decision. I write separately to highlight certain aspects of the legal analysis.

{¶ 34} All of the parties have filed objections to the magistrate's decision. The employer objects because it contends that Dr. Cameron's report is not some evidence upon which the commission could rely and because the commission's decision violates *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991). Neither objection has merit.

{¶ 35} First, the employer contends that Dr. Cameron's opinion is not some evidence upon which the commission could rely because it is internally contradictory. The employer notes that in one part of his report, Dr. Cameron indicates that during the short time the decedent survived the accident, the decedent was "in and out of consciousness." In another part of his report, Dr. Cameron opines "the decedent would not have regained consciousness, and therefore, there would have been no voluntary capacity to use arms or legs." The employer contends that the commission could not rely on Dr. Cameron's report given this alleged contradiction. I disagree. There is nothing

contradictory in stating that the decedent was "in and out of consciousness" and at the same time stating that the decedent would not have regained consciousness after he lost consciousness for the last time. Moreover, the decedent's consciousness or unconsciousness has no bearing on Dr. Cameron's ultimate opinion that, given the decedent's massive head and spinal injuries, the decedent lost, for all practical purposes, the use of his arms, legs, eyes, and ears. Therefore, I agree with the majority decision to overrule this objection of the employer.

{¶ 36} In its second objection, the employer contends that the commission's order violates *Noll*. The commission concedes this error. However, the commission contends that the error is harmless under these circumstances. I agree.

{¶ 37} Although the commission failed to explicitly state the evidence upon which it relied, that evidence is obvious from the record and the record contains no conflicting evidence. As noted above, Dr. Cameron opined that the decedent's head injuries were so massive that the decedent lost for all practical purposes the use of his arms, legs, eyes, and ears. The hospital records support this conclusion. The record contains no contrary evidence. A remand to the commission to require it to specifically identify the only medical evidence in the record would be a vain act because the result would be the same. *State ex rel. Little v. Indus. Comm.*, 10th Dist. No. 11AP-1110, 2013-Ohio-282, ¶ 7 (quoting *State ex rel. Menough v. Indus. Comm.*, 10th Dist. No. 01AP-1031, 2002-Ohio-3253 (harmless error when result would be the same). For this reason, I agree with the majority that we should overrule this objection of the employer.

{¶ 38} The commission has also objected to the magistrate's decision. The commission argues that: (1) the magistrate incorrectly concluded that R.C. 4123.57(B) could not serve as the basis for the widow's receipt of scheduled loss benefits; and (2) the magistrate erred by concluding that the commission abused its discretion in calculating the amount of benefit it awarded.[1] I agree with the majority that both objections should be sustained.

{¶ 39} The magistrate concluded that the portion of R.C. 4123.57(B) at issue here (involving a post-death award) was inapplicable because the decedent did not lose the use

---

[1] The decedent's widow has filed essentially the same objections.

No. 13AP-1024

of his arms, legs, eyes, and ears by "severance." As indicated in the majority decision, the Supreme Court of Ohio has interpreted R.C. 4123.57(B) to permit scheduled loss awards for both loss by amputation and loss of use for all practical purposes. *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166; *State ex rel. Moorehead v. Indus. Comm.*, 112 Ohio St.3d 27, 2006-Ohio-6364, ¶ 13. Although *Alcoa* involved an R.C. 4123.57(B) pre-death award, *Moorehead* relied on the same principle in the context of a post-death award.

{¶ 40} The facts in *Moorehead* are very similar to those presented here. The decedent in *Moorehead* fell approximately 15 to 20 feet head first onto a concrete floor and suffered severe spinal and head injuries. The decedent never regained consciousness and died 90 minutes after the fall. The decedent's widow applied for death benefits and for R.C. 4123.57(B) scheduled loss compensation based upon the decedent's loss of use of both arms and legs. The issue addressed by the court was whether the widow was entitled to a post-death scheduled loss award for loss of use when the decedent never regained consciousness following the fatal fall. The court found that consciousness was not required for scheduled loss benefits. If a post-death scheduled loss award were limited to a loss by severance, there would have been no reason for the court to address whether consciousness was required.

{¶ 41} Moreover, I can conceive of no reason why the court's *Alcoa* analysis would not apply to both pre-death and post-death awards. Although the magistrate notes that the word "severance" only appears in the context of a post-death award, other parts of R.C. 4123.57(B) refer to "amputation" and the *Alcoa* court found that the loss referred to in R.C. 4123.57(B) included a loss of use for all practical purposes.

{¶ 42} For all of these reasons, I agree with the majority decision to sustain the commission's first objection.

{¶ 43} In its second objection, the commission argues that the magistrate erroneously concluded that the commission abused its discretion in awarding the decedent's widow 1,225 weeks of scheduled loss compensation. The majority agrees and I concur.

{¶ 44} R.C. 4123.60 provides in relevant part:

> If the decedent would have been lawfully entitled to have applied for an award at the time of his death the administrator may * * * award and pay an amount, not exceeding the compensation which the decedent might have received, but for his death, for the period prior to the date of his death, to such of the dependents of the decedent * * * as the administrator determines in accordance with the circumstances in each such case, but such payments may be made only in cases in which application for compensation was made in the manner required by this chapter, during the lifetime of such injured or disabled person, or within one year after the death of such injured or disabled person.

{¶ 45} Here, it is undisputed that the widow applied for the scheduled loss benefit within one year of the decedent's death. The decedent would have been lawfully entitled to have applied for a scheduled loss award at the time of his death. Therefore, the administrator was authorized under R.C. 4123.60 to award and pay to the decedent's widow an amount "not exceeding the compensation which the decedent *might* have received, but for his death, for the period prior to his death." (Emphasis added.) In other words, the administrator is permitted to pay the widow compensation that does not exceed the award the decedent might have applied for and received but for his death, for the period of time prior to the decedent's death.

{¶ 46} The administrator could have awarded the decedent 1,225 weeks of scheduled loss compensation for the decedent's loss of use for all practical purposes of his arms, legs, sight, and hearing as set forth in the schedule contained in R.C. 4123.57. It is also within the commission's discretion to determine whether such payments are made consecutively or concurrently (i.e., in a lump sum). *State ex rel. Estate of Sziraki v. Admr., Bur. of Workers' Comp.*, 137 Ohio St.3d 201, 2013-Ohio-4007, ¶ 34, citing *State ex rel. Estate of McKenney v. Indus. Comm.*, 110 Ohio St.3d 154, 2006-Ohio-3562, ¶ 20. Although it appears that the commission's general policy is to pay benefits consecutively rather than concurrently, *Id.*, R.C. 4123.64(A) authorizes the administrator to award benefits "under special circumstances, and when the same is deemed advisable for the purpose of rendering the injured or disabled employee financial relief or for the purpose of furthering his rehabilitation." Ohio Adm.Code 4123-3-37 grants the administrator the same authority. Because the administrator could have theoretically awarded the decedent 1,225 weeks of compensation payable in a lump sum prior to his death, the commission

did not abuse its discretion or act contrary to law when it affirmed the administrator's award of 1,225 weeks of compensation to the decedent's widow. Although the administrator was not required to grant such an award under R.C. 4123.60, the administrator was authorized to do so and the commission did not abuse its discretion in affirming the award. The commission is best positioned to determine what scheduled loss award is justified within the bounds of R.C. 4123.57(B) and 4123.60. Moreover, courts must liberally construe R.C. Chapter 4123 in favor of employees. R.C. 4123.95; *State ex rel. Walker v. Indus. Comm.*, 58 Ohio St.2d 402, 403 (1979).

{¶ 47} A scheduled loss award under these circumstances is also consistent with the notion that such an award to an injured worker for the loss by amputation or loss of use for all practical purposes of a body part is in the nature of a damage award and is awarded irrespective of work capacity. *State ex rel. Miller v. Indus. Comm.*, 97 Ohio St.3d 418, 2002-Ohio-6664, ¶ 12.[2]

{¶ 48} The employer emphasizes that awarding the widow a scheduled loss benefit under these circumstances is a windfall because the widow has already received a death benefit pursuant to R.C. 4123.60. This windfall is highlighted if the dependent of an employee who dies immediately from an industrial accident can receive only a death benefit while the dependent of an employee who lives only a matter of minutes following an industrial accident may receive a death benefit plus a significant scheduled loss award. Nevertheless, as noted by the court in *Moorehead*, "[p]ublic policy arguments relative to the requisites of scheduled loss benefits pursuant to R.C. 4123.57 are better directed the General Assembly." *Id.* at ¶ 19.

{¶ 49} For the foregoing reasons, I concur in the majority decision and sustain the objections of the commission and the widow to the magistrate's decision and deny the relator's request for a writ of mandamus.

---

[2] I recognize that in *McKenney*, the court stated that "the loss of earning capacity that scheduled loss compensation was intended to ameliorate ceases upon the death of the injured worker–just as it does with all other forms of disability compensation." *Id.* at ¶ 16. However, *McKenney* makes not mention of *Miller* nor does it address other Supreme Court authority finding scheduled loss awards akin to damages including *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 42 Ohio St.2d 278, 282 (1975). Moreover, as noted by the commission, the court in *Sziraki* removed its citation to *McKenney* for the proposition that scheduled loss benefits were intended to ameliorate loss of earning capacity on the commission's motion for reconsideration. *Sziraki*, 2013-Ohio-5285. Therefore, it appears that we must follow *Miller*.

No. 13AP-1024

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Arberia, LLC, | : | |
| Relator, | : | |
| v. | : | No. 13AP-1024 |
| Industrial Commission of Ohio and Dhimitraq Taluri, Decedent, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on May 27, 2014

*Habash & Reasoner LLC, Dennis Behm, Stephen Habash* and *David P. Everett,* for relator.

*Michael DeWine*, Attorney General, and *Colleen C. Erdman*, for respondent Industrial Commission of Ohio.

*Garson Johnson LLC,* and *Grace A. Szubski,* for respondent Doloreza Taluri.

### IN MANDAMUS

{¶ 50} Relator, Arberia, LLC, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted scheduled loss benefits to respondent Doloreza Taluri ("claimant") the widow of Dhimitraq Taluri ("decedent"), for a total of 1,225 weeks for decedent's loss of use of his lower and upper extremities as well as 100 percent loss of use of bilateral eyes and bilateral ears, and ordering the commission to find that no more than 1 week loss of use compensation should be awarded, and further

No. 13AP-1024

ordering the commission to cite the evidence it relied on to reach the finding that decedent is entitled to those loss of use awards.

<u>Findings of Fact</u>:

{¶ 51} 1. On October 28, 2011, decedent sustained fatal injuries when he fell through a roof while working on the demolition of a building.

{¶ 52} 2. Decedent's injuries were extensive and included the following:

This is a 63-year-old male who fell about 30 feet today while working on a roof. He was unresponsive * * *. Pupils were blown. Brain matter and blood were coming from his nose. He had obvious facial trauma.

{¶ 53} CT scans showed the following:

CT head - massive right frontotemporal epidural hematoma with transfalcine and transtentorial herniation; there is associated intraparenchymal, intraventricular, subdural and subarachnoid blood; severely comminuted skull base and calvarial fractures[.]

CT face - grossly comminuted craniofacial fractures[.]

CT inner ear - extensive skullbase fractures as above with extension into the carotid canals bilaterally; probable minimal pneumolabyrinth on the left[.]

CTA H/N - massive epidural hematoma with active extravasation that is most likely from the right middle meningeal artery; otherwise, the major intracranial and extracranial vessels are grossly intact with no evidence of occlusion nor dissection[.]

CT C/S - multiple transverse process fractures are noted on the right from C6-T2 and on the left from T2-T4; C6-T1 spinous process fractures are present[.]

CT TLS - superior endplate fractures of the T2 and T3 vertebral bodies with bilateral pedicle fractures at the T2 level; T1 spinous process fracture and transverse process fractures from T1-T3[.]

CT CAP - fractures of the right 1st and 2nd ribs, C7 and T1 spinous processes and the right transverse processes, left T3 transverse process and fractures of T2 and T3 vertebral bodies[.]

{¶ 54} Attending physician John J. Como, M.D., spent more than 75 minutes providing critical care to the decedent and ultimately explained to his family: "[T]his was a nonsurvivable injury."

{¶ 55} 3. Death benefits were granted by the commission.

{¶ 56} 4. On June 4, 2012, claimant filed a motion seeking loss of use compensation pursuant to R.C. 4123.57(B) for decedent's loss of use of his right and left arms, right and left legs, both eyes, and his hearing in both ears. Claimant submitted the hospital records in support of her motion.

{¶ 57} 5. Donald Cameron, M.D., was asked to review the medical evidence and provide an opinion concerning what permanent loss of use decedent would have had if he survived the injuries. In his June 26, 2012 report, Dr. Cameron opined:

> In my medical opinion, the allowed injury would have resulted in a total permanent loss of the use of the arms to such a degree that the affected body parts would have been useless for all practical purposes. This applied to both arms. The extent of brain injury was such that the injured worker would have had no control of the arms. Similarly, the extent of cerebral injury was such that one expected no recovery of any useful neurological function and therefore, the injured worker would have had permanent loss of use of the legs to the degree that the affected body parts would have been useless. In both of these instances, the industrial accident led to his result by way of the catastrophic cerebral injury via multiple comminuted skull fractures and intracranial hemorrhages which were caused by the fall from the 30' height onto the head.

> The residual functional capacity of the arms and the legs had the decedent survived this incident would have been zero. The decedent would not have regained consciousness and therefore, there would have been no voluntary capacity to use the arms or legs. These findings are based on the presence of an unrecoverable cerebral injury including transtentorial and transfalcine herniation, massive epidural hematoma and extensive intracranial hemorrhage involving the cerebral hemispheres, the ventricles and the external spaces within the skull.

> In my medical opinion, the allowed injury of the brain would have resulted in a total and permanent loss of vision. The use

of the eyes would have been useless in the face of a cerebrum that was non-functional and unable to obtained [sic] any recovery of consciousness and therefore, actual visual processes. The industrial accident led to this result through the extensive destruction of cortical tissue, the presence of herniation and extensive bleeding which eliminated the ability of the injured worker to regain consciousness and hence, any use of vision. In addition to this finding, the right eye was described as having described [sic] a large displacing hematoma which would have further diminished any ability for useful visual function.

Had the decedent survived the accident, no residual vision would have been expected from this industrial accident. The findings establishing this limitation are based on the fact that the injured worker sustained a catastrophic, non-survivable accident with extensive disruption of all cerebral functions.

Finally, in my medical opinion, the allowed injury would have resulted in total permanent loss of hearing to such a degree that the hearing organs would have been useless for all practical purposes. The hearing organs would have been useless given the extensive damage to cortical tissue eliminating cerebral processing of signals coming from the auditory apparatus. In addition, in this instance, there is evidence of severe damage to the supporting structures of the auditory apparatus further enhancing total and permanent loss of hearing abilities. This is loss [sic] is based on the finding of extensive cerebral damage and catastrophic brain injury.

Had the decedent survived this incident, he would have been left vegetative, incapable of any hearing or acknowledging hearing signals. The present findings are based on the finding of a catastrophic cerebral injury with diffuse parenchymal damage as well as the severe and catastrophic damage to the basilar skull bones, the normal seat of the auditory apparatus.

{¶ 58} 6. The Ohio Bureau of Workers' Compensation ("BWC") issued an order dated January 24, 2013 granting claimant's motion for loss of use as follows:

The injured worker has sustained a 100 percent loss due to loss of use bilateral eyes. It is ordered that the injured worker be awarded permanent partial compensation for 250 weeks

No. 13AP-1024

> at the rate of 783.00 from 10/28/2011 to 8/1/2016. The total award is $195,750.00.
>
> In accordance with the power of attorney dated 3/22/12, payment will be made to Seaman Garson, LLC.
>
> The injured worker has sustained a 100 percent loss of hearing in the bilateral ears. It is ordered that the injured worker be awarded permanent partial compensation for 125 weeks at the rate of $783.00 from 8/16/2012 to 1/3/2019. The total award is $97,875.00.
>
> In accordance with the power of attorney dated 3/22/12, payment will be made to Seaman Garson, LLC.
>
> The injured worker has sustained a loss of use of the lower extremities. It is ordered that the injured worker be awarded permanent partial compensation for 400 weeks at the rate of $783.00 from 1/4/2019 to 9/3/2026. The total award is $313,200.00.
>
> In accordance with the power of attorney dated 3/22/12, payment will be made to Seaman Garson, LLC.
>
> The injured worker has sustained a loss of use of the upper extremities. It is ordered that the injured worker be awarded permanent partial compensation for 450 weeks at the rate of $783.00 from 9/4/2026 to 4/19/2035. The total award is $352,350.00
>
> * * *
>
> This decision is based on the physician's review of Dr. Cameron dated 6/26/12.

{¶ 59} 7. Relator's appeal was heard before a district hearing officer ("DHO") on April 16, 2013. The DHO affirmed the BWC order in its entirety.

{¶ 60} 8. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on June 11, 2013. The SHO affirmed the prior DHO order, stating:

> The Hearing Officer finds that, as a result of the 10/28/2011 industrial injury that resulted in his death, the Injured Worker sustained a total loss of use of both legs and both arms as well as a total loss of vision in both eyes and a total loss of hearing in both ears. The Injured Worker was entitled to payment of scheduled loss awards for all of these

No. 13AP-1024

impairments. This finding is based on the holding of the Ohio Supreme Court in State ex rel. Moorehead v. Industrial Commission 112 Ohio St.3d 27 (2006). In this case the Court held that a decedent does not have to survive an injury for any specified time or be cognizant of a loss of use in order to qualify for a scheduled loss award.

The Employer argued, based on the holding of the Tenth District Court of Appeals in State ex rel. Wallace v. Industrial Commission No. 11AP-897 (2013) that the award was not payable as the decedent sustained injuries that were not survivable. The Hearing Officer finds that Wallace is distinguishable from the instant case. In Wallace the Court upheld denial of the scheduled loss award because the Injured Worker died at the time of the injury. In the instant case the records of MetroHealth Medical Center establish that the Injured Worker lived for several hours following the industrial injury.

Payment of the scheduled loss award is to begin as of 10/28/2011. Payment is to be made to the Widow-Claimant. The Hearing Officer finds that the case of State ex rel. McKenney v. Industrial Commission is inapplicable to the instant case as the Widow-Claimant is living. All proof on file was reviewed and considered.

{¶ 61} 9. Relator's further appeal was refused by order of the commission mailed July 6, 2013.

{¶ 62} 10. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 63} There are two issues presented here. First, relator contends that the commission's order fails to cite the evidence upon which the commission relied to grant claimant's motion for decedent's loss of use of his upper and lower extremities, both eyes and ears. Claimant counters stating that the medical evidence is uncontroverted and the commission's citation to the hospital records, as well as the BWC's citation to the report of Dr. Cameron, is sufficient. The commission acknowledges its order does not cite the evidence as required.

{¶ 64} The second issue concerns the amount of compensation payable to claimant under R.C. 4123.57(B) and 4123.60. Relator argues that claimant is not entitled to 1,225 weeks of compensation, but, instead, is entitled to receive no more than one week of

No. 13AP-1024

scheduled loss benefits. Both claimant and the commission contend that claimant is entitled to receive all 1,225 weeks of compensation as calculated by the BWC.

{¶ 65} For the reasons that follow, the magistrate finds as follows: (1) the commission's order does not violate the requirements of *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991); and (2) application of R.C. 4123.57(B) and 4123.60 requires that a writ of mandamus be granted ordering the commission to find that claimant is not entitled to 1,225 weeks of scheduled loss compensation, but, rather, to some lesser amount to be determined by the commission.

{¶ 66} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 67} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

## STANDARD FOR LOSS OF USE

{¶ 68} In order to qualify for a loss of use award, relator was required to present medical evidence demonstrating that, for all intents and purposes, he had lost the use of his left upper extremity. *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166.

No. 13AP-1024

{¶ 69} In *Alcoa*, at ¶ 10, the court set forth the historical development of scheduled awards for loss of use under R.C. 4123.57(B) as follows:

> Scheduled awards pursuant to R.C. 4123.57(B) compensate for the "loss" of a body member and were originally confined to amputations, with the obvious exceptions of hearing and sight. In the 1970s, two cases—*State ex rel. Gassmann v. Indus. Comm.* (1975), 41 Ohio St.2d 64, 70 O.O.2d 157, 322 N.E.2d 660, and *State ex rel. Walker v. Indus. Comm.* (1979), 58 Ohio St.2d 402, 12 O.O.3d 347, 390 N.E.2d 1190—construed "loss," as similarly used in R.C. 4123.58, to include loss of use without severance. *Gassmann* and *Walker* both involved paraplegics. In sustaining each of their scheduled loss awards, we reasoned that "[f]or all practical purposes, relator has lost his legs to the same effect and extent as if they had been amputated or otherwise physically removed." *Gassmann*, 41 Ohio St.2d at 67, 70 O.O.2d 157, 322 N.E.2d 660; *Walker*, 58 Ohio St.2d at 403-404, 12 O.O.3d 347, 390 N.E.2d 1190.

{¶ 70} In *Alcoa*, the claimant, Robert R. Cox, sustained a left arm amputation just below his elbow. Due to continuing hypersensitivity at the amputation site, Cox was prevented from ever wearing a prosthesis. Consequently, Cox filed a motion seeking a scheduled loss of use award for the loss of use of his left arm.

{¶ 71} Through videotape evidence, Alcoa established that Cox could use his remaining left arm to push open a car door and to tuck paper under his arm. In spite of this evidence, the commission granted Cox an award for the loss of use of his left arm.

{¶ 72} Alcoa filed a mandamus action which this court denied. Alcoa appealed as of right to the Supreme Court of Ohio.

{¶ 73} Affirming this court's judgment and upholding the commission's award, the Supreme Court explained, at ¶ 10-15:

> Alcoa urges the most literal interpretation of this rationale and argues that because claimant's arm possesses some residual utility, the standard has not been met. The court of appeals, on the other hand, focused on the opening four words, "for all practical purposes." Using this interpretation, the court of appeals found that some evidence supported the commission's award and upheld it. For the reasons to follow, we affirm that judgment.

No. 13AP-1024

Alcoa's interpretation is unworkable because it is impossible to satisfy. *Walker* and *Gassmann* are unequivocal in their desire to extend scheduled loss benefits beyond amputation, yet under Alcoa's interpretation, neither of those claimants would have prevailed. As the court of appeals observed, the ability to use lifeless legs as a lap upon which to rest a book is a function unavailable to one who has had both legs removed, and under an absolute equivalency standard would preclude an award. And this will always be the case in a nonseverance situation. If nothing else, the presence of an otherwise useless limb still acts as a counterweight—and hence an aid to balance—that an amputee lacks. Alcoa's interpretation would foreclose benefits to the claimant who can raise a mangled arm sufficiently to gesture or point. It would preclude an award to someone with the hand strength to hold a pack of cards or a can of soda, and it would bar—as here—scheduled loss compensation to one with a limb segment of sufficient length to push a car door or tuck a newspaper. Surely, this could not have been the intent of the General Assembly in promulgating R.C. 4123.57(B) or of *Gassmann* and *Walker.*

Pennsylvania defines "loss of use" much as the court of appeals did in the present case, and the observations of its judiciary assist us here. In that state, a scheduled loss award requires the claimant to demonstrate either that the specific bodily member was amputated or that the claimant suffered the permanent loss of use of the injured bodily member for all practical intents and purposes. Discussing that standard, one court has written:

"Generally, the 'all practical intents and purpose' test requires a more crippling injury than the 'industrial use' test in order to bring the case under section 306(c), supra. However, it is not necessary that the injured member of the claimant be of absolutely no use in order for him to have lost the use of it for all practical intents and purposes." *Curran v. Walter E. Knipe & Sons, Inc.* (1958), 185 Pa.Super. 540, 547, 138 A.2d 251.

This approach is preferable to Alcoa's absolute equivalency standard. Having so concluded, we further find that some evidence indeed supports the commission's decision. Again, Dr. Perkins stated:

"It is my belief that given the claimant's residual hyper-sensitivity, pain, and tenderness about his left distal forearm,

that he is unable to use his left upper limb at all and he should be awarded for the loss of use of the entire left upper limb given his symptoms. He has been given in the past loss of use of the hand, but really he is unable to use a prosthesis since he has had the amputation, so virtually he is without the use of his left upper limb * * *."

## EVIDENCE OF LOSS OF USE

{¶ 74} Relator argues that the commission's citation to the records of the MetroHealth Medical Center do constitute some evidence that decedent lived for several hours after the fall, but do not constitute some evidence that decedent suffered a loss of use of his upper and lower extremities, as well as his sight and hearing. In the event the court finds the BWC's citation to the medical report of Dr. Cameron is sufficient at the SHO level, relator claims that report does not constitute some evidence.

{¶ 75} Relator's criticism of the report of Dr. Cameron is that it is based on an improper legal standard. Specifically, in his report, Dr. Cameron stated that, "[h]ad the decedent survived this incident, "the allowed injury would have resulted in a total permanent loss of the use of the arms to such a degree that the affected body parts would have been useless for all practical purposes," "the injured worker would have had permanent loss of use of the legs to the degree that the affected body parts would have been useless," "the allowed injury of the brain would have resulted in a total and permanent loss of vision," and "the allowed injury would have resulted in total permanent loss of hearing to such a degree that the hearing organs would have been useless for all practical purposes."

{¶ 76} Relator argues that loss of use is not dependent on whether the decedent would have survived the injury, but is whether claimant established, by medical evidence, a loss of use regardless of the period of time decedent survived. Relator asserts that Dr. Cameron essentially stated the decedent would have eventually suffered a complete loss of use only if he survived.

{¶ 77} The magistrate finds that relator has mischaracterized Dr. Cameron's report. In light of all the medical evidence in the record, decedent's injury can be described as catastrophic. Based on the neck fractures, the evidence is undisputed that had decedent been conscious, he could not have used his arms and legs. Further, there

No. 13AP-1024

was significant trauma to decedent's ears, eyes, and brain which, as Dr. Cameron stated, would have resulted in a total and permanent loss of his hearing abilities and that he would have no residual vision.

{¶ 78} Although Dr. Cameron repeatedly indicated that decedent's loss would exist and be permanent if he survived the injury, the fact is that decedent did survive the injury for at least four and one-half hours. There was no requirement that decedent survive any longer than that. As such, the magistrate finds that the medical evidence in the record does support the commission's determination that decedent sustained a total loss of use of both arms and legs, as well as his vision and hearing. Further, the magistrate specifically notes that the BWC order was never vacated. It was affirmed at every level. While the hearings before the DHO and SHO were de novo, neither party presented any additional evidence. Further, there is no contradictory medical evidence in the record and returning this matter to the commission would not change the commission's finding that decedent did suffer the losses of use found by the commission. As such, the magistrate finds that the BWC's citation to Dr. Cameron's report constitutes some evidence upon which the commission relied. That report, in conjunction with the hospital records, supports the commission's order and the magistrate finds there is no *Noll* violation here.

### AMOUNT OF COMPENSATION PAYABLE

{¶ 79} However, having found that the commission's order does support the loss of use awards made, the magistrate agrees with relator's assertion that the commission abused its discretion when it ordered that 1,225 weeks of compensation be paid to claimant.

{¶ 80} The two statutes relevant here are R.C. 4123.57(B)[3] and 4123.60[4]. When reading those statutes, it is apparent the legislature has set up some distinctions including whether or not an award has been made <u>prior to</u> the death of an injured worker (decedent herein).

{¶ 81} Both R.C. 4123.57(B) and 4123.60 address the situation where an award has been made <u>prior to</u> the death of the injured worker. R.C. 4123.57(B) provides, in pertinent part:

---

[3] Entitled Partial Disability Compensation.
[4] Entitled Persons eligible for benefits; limitations.

No. 13AP-1024

> When an <u>award</u> under this division <u>has been made prior to the death</u> of an employee <u>all unpaid installments accrued or to accrue</u> under the provisions of the award <u>shall be payable to the surviving spouse</u>.

(Emphasis added.)

{¶ 82} R.C. 4123.60 provides, in pertinent part:

> In all cases where an award <u>had been made</u> on account of * * * permanent partial * * * disability in which <u>there remains an unpaid balance, representing payments accrued and due to the decedent at the time of his death, the administrator may</u> * * * <u>award or pay any unpaid balance</u> of such award to such of the dependents of the decedent * * * as the administrator determines in accordance with the circumstances in each such case.

(Emphasis added.)

{¶ 83} As above indicated, under both R.C. 4123.57(B) and 4123.60, when an award of partial disability has been made and the injured worker dies thereafter, unpaid amounts either shall be paid or may be paid prior to the death of an injured worker to the surviving spouse. However, neither of these statutory provisions apply here because no award had been made prior to decedent's death.

{¶ 84} In the present case, decedent died before an award was made. Both R.C. 4123.57(B) and 4123.60 also address the situation where no award has been made before the injured worker dies. R.C. 4123.57(B) provides as follows:

> When an employee has <u>sustained the loss of a member by severance,</u> but <u>no award has been made</u> on account thereof <u>prior to the employee's death,</u> the administrator <u>shall make</u> an award in accordance with this division <u>for the loss which shall be payable to the surviving spouse.</u>

(Emphasis added.)

{¶ 85} R.C. 4123.60 provides the following provision to be applied where no award has been made prior to the decedent's death:

> <u>If the decedent would have been lawfully entitled to have applied for an award at the time of his death the administrator may * * * award and pay an amount, not exceeding the compensation which the decedent might have</u>

No. 13AP-1024

> received, but for his death, for the period prior to the date of his death, to such of the dependents of the decedent * * * as the administrator determines in accordance with the circumstances in each such case, but such payments may be made only in cases in which application for compensation was made * * * or within one year after the death of such injured or disabled person.

(Emphasis added.)

{¶ 86} Despite the arguments made by both the commission and claimant, the magistrate specifically finds that the above portion of R.C. 4123.57(B) upon which they rely does not apply here. That section of R.C. 4123.57(B) provides:

> When an employee has sustained the loss of a member by severance, but no award has been made on account thereof prior to the employee's death, the administrator shall make an award in accordance with this division for the loss which shall be payable to the surviving spouse.

(Emphasis added.)

{¶ 87} Although both the commission and claimant assert the entire award is payable under this provision, the magistrate disagrees. This provision is specifically limited to when an employee has sustained a loss of use of a member by **severance** but where no award has been made prior to the employee's death. Although in general, R.C. 4123.57(B) has been interpreted to apply not only to severance but where an employee has suffered the loss of use of a specific member, the legislature has chosen to leave the word "severance" in this portion of the statute. This is the only place in R.C. 4123.57(B) where the word "severance" is used.

{¶ 88} The paramount goal of statutory construction is to ascertain and give effect to the legislature's intent in enacting the statute. *Yonkings v. Wilkinson,* 86 Ohio St.3d 225 (1999). In so doing, the court must first look to the plain language of the statute and the purpose to be accomplished. *State ex rel. Pennington v. Gundler,* 75 Ohio St.3d 171, 173 (1996). Words used in a statute must be accorded their usual, normal and customary meaning. *Id.,* citing R.C. 1.42. If the words in a statute are " 'free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation.' " *State v. Hairston,* 101 Ohio

St.3d 308, 2004-Ohio-969, ¶ 12, quoting *Slingluff v. Weaver,* 66 Ohio St. 621 (1902), paragraph two of the syllabus. " 'An unambiguous statute is to be applied, not interpreted.' " *Meeks v. Papadopulos,* 62 Ohio St.2d 187, 190 (1980), quoting *Sears v. Weimer,* 143 Ohio St. 312 (1944), paragraph five of the syllabus.

{¶ 89} In the present case, it is undisputed that decedent did not suffer the loss of any member by severance; as such, the magistrate concludes that this portion of R.C. 4123.57(B) does not apply here. To the extent clamant relies on the mandatory language of this statute, claimant's argument fails.

{¶ 90} There is one more provision to consider: R.C. 4123.60. The magistrate specifically finds that the following provision of R.C. 4123.60 does apply here:

> If the decedent would have been lawfully entitled to have applied for an award at the time of his death the administrator may * * * award and pay an amount, not exceeding the compensation which the decedent might have received, but for his death, for the period prior to the date of his death, to such of the dependents of the decedent * * * as the administrator determines in accordance with the circumstances in each such case, but such payments may be made only in cases in which application for compensation was made * * * or within one year after the death of such injured or disabled person.

{¶ 91} In the present case, because decedent initially survived the accident, he would have been lawfully entitled to have applied for the loss of use awards for which his surviving spouse (claimant herein) did apply. Further, it is undisputed that claimant filed the application for loss of use within one year after the death of decedent. Pursuant to R.C. 4123.60, the administrator of the BWC had distinction to award and pay an amount, not exceeding the compensation which decedent might have received, but for his death, for the period prior to the date of his death, to his surviving spouse. It should also be noted that this statute permits, but does not require, the administrator of the BWC to award and pay to the surviving spouse (claimant herein) some amount of compensation which decedent might have received, but for his death for the period prior to his death, to dependents such as claimant.

**RELEVANT CASES**

No. 13AP-1024

{¶ 92} In *State ex rel. Estate of McKenney v. Indus. Comm.,* 110 Ohio St.3d 54, 2006-Ohio-3562, Patrick McKenney sustained a work-related injury and his workers' compensation claim was allowed for quadriplegia and he was awarded 850 weeks of scheduled loss benefits under R.C. 4123.57(B) for the loss of use of all four limbs. After receiving six weeks of loss of use payments, McKenney died of an injury-related heart attack. McKenney's surviving spouse moved the commission for a lump sum payment of the remaining 844 weeks of scheduled loss compensation. However, the following day, the surviving spouse died and her estate was substituted as a party for the purposes of pursuing her motion.

{¶ 93} The estate relied on the following portion of R.C. 4123.57(B):

> When an <u>award</u> under this division <u>has been made prior to the death</u> of an employee <u>all unpaid installments accrued</u> or to accrue under the provisions of the award <u>shall be payable to the surviving spouse</u>.

(Emphasis added.)

{¶ 94} Based on the above provision, the estate argued it was entitled to receive that which the surviving spouse would have been entitled to receive but for her death.

{¶ 95} The estate argued that the entire amount of the scheduled loss award accrued and was payable to the surviving spouse at the time of McKenney's death. The court disagreed specifically noting that the statute presumed a living dependent which no longer existed. The court stated:

> The estate's reliance on the mandatory "shall" is misplaced, because the mandate presumes a living dependent, which is not the case here. Moreover, the statute specifically refers to installments "accrued *or to accrue.*" (Emphasis added). If the entire amount accrued immediately, as the estate claims, there would be no need for this language. The estate's interpretation of the statute is, therefore, rendered untenable by the statute's very language.

*Id.* at ¶ 11.

{¶ 96} The court reasoned further:

> [T]he loss of earning capacity that scheduled loss compensation was intended to ameliorate ceases upon the

No. 13AP-1024

death of the injured worker—just as it does with all other forms of disability compensation.

\* \* \*

R.C. 4123.57(B) anticipates the payment of scheduled loss compensation in weekly installments. Commutation to a lump sum can occur, but only if the injured worker first applies for lump-sum payment, meets certain specified criteria designated in R.C. 4123.64, and receives approval from the bureau. The specificity of those criteria—and the fact that satisfaction still does not guarantee approval by the bureau—demonstrates that the method of payment is of substantive concern to the General Assembly and should not be summarily dismissed as irrelevant to our inquiry \* \* \*.

We, too, have acknowledged the substantive, as opposed to simply ministerial, nature of the payment method in a scheduled loss situation. In *Swallow v. Indus. Comm.* (1988), 36 Ohio St.3d 55, 57, 521 N.E.2d 778, we approved the commission's "rationale that claimants are generally placed in a better position by receiving payments consecutively rather than concurrently." We held that it was within the discretion of the commission to determine that appellant would be put in a better position by receiving 850 weeks of payments consecutively rather than two 200-week periods of payments for the loss of his legs and two 250-week periods of payments for the loss of his arms, all concurrently.

The estate claims that to deny full recovery offends equal protection because state-fund and self-insured employees will be treated differently. The estate, however, never develops this argument, using it instead as a forum for objecting to the commission's decision to deny lump-sum payment in favor of installment payments—an action expressly within the commission's discretion, and irrelevant to the employee's status as a self-insured or state-fund employee.

In the end, the estate has not offered a compelling reason why we should deviate from prior decisions limiting the dependent's estate to those amounts actually due, but unpaid, to the dependent before his or her death. In this case, the commission, after careful consideration, specifically denied a request for lump-sum payment because no further award was payable whether by installment or lump sum.

No. 13AP-1024

*Id.* at 16, 19-20.

{¶ 97} The estate of McKenney's surviving spouse was found not to be entitled to the lump sum award for several reasons: (1) because the surviving spouse had died, there was no living dependent to whom the award was payable; (2) scheduled loss compensation is intended to ameliorate the loss of earning capacity of the injured worker; (3) most forms of disability compensation cease upon the death of the injured worker; (4) McKenney's surviving spouse was not guaranteed to have her application for lump sum payment approved by the commission; and (5) the commission has discretion to pay scheduled loss benefits on a weekly basis.

{¶ 98} A few months later, the Supreme Court of Ohio decided the case of *State ex rel. Moorehead v. Indus. Comm.,* 112 Ohio St.3d 27, 2006-Ohio-6364, which involved a factual scenario which is virtually identical to the scenario presented here. William Moorehead fell approximately 20 feet head first onto a concrete floor and suffered severe spinal cord and other injuries. Unrebutted medical evidence established the spinal cord injury rendered him a quadriplegic. Although Moorehead never regained consciousness, he died 90 minutes later.

{¶ 99} Moorehead's surviving spouse applied for death benefits under R.C. 4123.60 as well as scheduled loss compensation pursuant to R.C. 4123.57(B). The commission denied the application for scheduled loss compensation on grounds that those benefits may only be awarded to injured workers who both experience a physical and sustained loss of use as well as consciously perceive and experience the same. Because Moorehead was comatose and completely unaware of the extent of his injuries, the commission denied the award.

{¶ 100} While this court agreed with the commission on appeal, the Supreme Court of Ohio reversed stating:

> The commission concluded that the decedent's loss of use "was contingent upon his survival." It further concluded that the "decedent did not survive." But Moorehead did survive the fall, albeit for only a short period, as it is undisputed that he did not die upon impact. R.C. 4123.57(B) does not specify a required length of time of survival after a loss-of-use injury before benefits pursuant to R.C. 4123.57(B) are payable.

No. 13AP-1024

We have long recognized that neither administrative agencies nor this court "may legislate to add a requirement to a statute enacted by the General Assembly." *Wheeling Steel Corp. v. Porterfield* (1970), 24 Ohio St.2d 24, 27-28, 53 O.O.2d 13, 263 N.E.2d 249. Rather, in interpreting statutes "it is the duty of this court to give effect to the words used, not to delete words used or to insert words not used." *Columbus-Suburban Coach Lines, Inc. v. Pub. Util. Comm.* (1969), 20 Ohio St.2d 125, 127, 49 O.O.2d 445, 254 N.E.2d 8. We therefore cannot condone the commission's addition of a requirement that a worker survive for some extended period of time, left unspecified by the commission or the General Assembly, when considering the worker's entitlement to a scheduled loss benefit.

Similarly, there is no language in R.C. 4123.57(B) requiring that an injured worker be consciously aware of his paralysis in order to qualify for scheduled loss benefits. In an analogous case the Supreme Court of New Hampshire considered a scheduled loss application filed on behalf of a worker whose injury left him in an irreversible vegetative state. *Corson v. Brown Prods., Inc.* (1979), 119 N.H. 20, 397 A.2d 640. The application was denied administratively solely because Corson's vegetative state made him unaware of his loss. The New Hampshire Supreme Court vacated that decision and awarded scheduled loss compensation, writing:

"What is of paramount importance in this case is that words such as 'awareness' or 'consciousness' cannot be added under the guise of legislative history to a statute which clearly states that '[t]he scheduled awards under this section accrue to the injured employee simply by virtue of the loss or loss of the use of a member of the body.' * * * When the language used in a statute is clear and unambiguous, its meaning is not subject to modification by construction." Id., 119 N.H. at 23, 397 A.2d 640.

The same rule of statutory construction applies here. When "the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.* (1996), 74 Ohio St.3d 543, 545, 660 N.E.2d 463. R.C. 4123.57(B) does not say that compensation is dependent upon a claimant's conscious awareness of his or her loss, whether resulting from amputation or paralysis. Rather, where the requisite physical loss has been sustained,

No. 13AP-1024

> the statute directs that scheduled loss compensation shall be paid.
>
> This court should not graft duration-of-survival or cognizance requirements to R.C. 4123.57(B), because the statute has no text imposing them. Public-policy arguments relative to the requisites of scheduled loss benefits pursuant to R.C. 4123.57 are better directed to the General Assembly, including arguments that a specified time of survival should be mandated after a paralyzing injury and that a worker be cognizant of his or her loss before loss-of-use benefits are payable.

*Id.* at ¶ 14-19.

{¶ 101} After finding that Moorehead was entitled to the scheduled loss award, the court could have ordered the commission to pay the 900 weeks of compensation payable where the medical evidence demonstrated a loss of use of both upper and lower extremities, but declined to do so. Instead, the Supreme Court returned the matter to the commission so that the commission could determine the amount of benefits due and payable to the surviving spouse. Specifically, the court stated:

> The appellant proffered medical evidence establishing that William Moorehead sustained the physical loss of use of his limbs as a result of his fall. Consciousness of that loss during an extended period of survival is not required by R.C. 4123.57(B), and the commission therefore incorrectly applied the statute when it denied the appellant's application on that basis.
>
> We deem it appropriate that the commission determine in the first instance the amount of benefits due the appellant. That determination should be made in light of all relevant statutes and precedent, including our recent decision in *State ex rel. Estate of McKenney v. Indus. Comm.,* 110 Ohio St.3d 54, 2006-Ohio-3562, 850 N.E.2d 694.

*Id.* at ¶ 20-21. (Footnote omitted.)

{¶ 102} With regard to the amount of compensation due, Justice Lundberg Stratton postulated as follows in her concurring opinion:

> I concur in the holding that R.C. 4123.57(B) does not support the commission's reasons for denying Sandra Moorehead's application for scheduled loss benefits, and I agree with the

No. 13AP-1024

decision to remand this cause for a determination of the amount of benefits due Moorehead in light of *State ex rel. Estate of McKenney v. Indus. Comm.,* 110 Ohio St.3d 54, 2006-Ohio-3562, 850 N.E.2d 694. However, because the courts below did not have the benefit of *McKenney,* I write separately to explain why I believe that it and the relevant statutory authority limit Moorehead's award to one week of scheduled loss benefits.

* * *

R.C. 4123.57(B) authorizes an award of scheduled loss benefits to the surviving spouse when an employee has sustained a loss but the employee dies before the award is made. R.C. 4123.60 authorizes a surviving spouse to apply for and receive, in addition to death benefits, an award for compensation that the decedent would have been lawfully entitled to apply for at the time of his death. The amount of the award, however, may not exceed the compensation that the decedent might have received for the period prior to the date of death. Thus, R.C. 4123.60 appears to limit the surviving spouse's recovery of benefits other than compensation for death to an amount not exceeding what the decedent might have received for the period prior to his death.

* * *

We did not agree that McKenney was entitled to the entire award upon Patrick's death. Scheduled loss benefits, like most other forms of workers' compensation, compensate for a loss of earning capacity. "It therefore follows that the loss of earning capacity that scheduled loss compensation was intended to ameliorate ceases upon the death of the injured worker—just as it does with all other forms of disability compensation." *Id.* ¶ 16. R.C. 4123.57(B) anticipates the payment of scheduled loss compensation in weekly installments, which may be commuted to a lump sum under certain circumstances and only if the injured worker applies. R.C. 4123.64.

Consequently, I believe that Moorehead may be entitled to one week of scheduled loss benefits under R.C. 4123.57(B) to compensate for her husband's period of survival. The issue of consciousness is immaterial. But the presumed loss of earning capacity ceased upon William Moorehead's death. At that point, Sandra Moorehead became entitled to apply for

death benefits under R.C. 4123.59. I do not believe that the General Assembly intended for duplicate awards under these circumstances.

Finally, I believe that an award of scheduled loss benefits under these circumstances has potential long-term financial ramifications. A successful scheduled loss application, depending on the extent of injury, can generate huge sums of money costing the State Fund and self-insured employers millions of dollars. In this case, Moorehead seeks the full award of 850 weeks. If scheduled loss benefits are awarded no matter how short the employee's survival, this will likely encourage the dependent of any employee who dies in close proximity to an industrial injury to file for scheduled loss compensation. Such an award would have unintended results that would be financially devastating for the State Fund or a self-insured employer. I do not believe that the General Assembly intended R.C. 4123.57(B) to provide what would be the equivalent of an award of damages for personal injury.

*Id.* at ¶ 23, 26, 29-31. (Footnote omitted.)

## APPLICATION OF STATUTES AND CASE LAW

{¶ 103} Both the commission and claimant seemingly imply that *Moorehead* stands for the proposition that claimant, as a surviving spouse, is entitled to receive all 1,225 weeks of scheduled loss compensation. However, the Supreme Court in *Moorehead* did not order the commission to pay all 900 weeks of compensation. The court could have done so, but it is apparent from the court's ruling that the court did not believe the statutes and case law supported that result. Instead, the court directed the commission's attention to all relevant statutes and the *McKenney* decision and allowed the commission to make that determination in the first instance. Whatever the commission determined, no mandamus action followed and, as such, there is no case law which answers the question directly. As such, the magistrate finds the commission abused its discretion when it awarded 1,225 weeks of compensation.

## EFFECT OF RECENT SUPREME COURT DECISION

{¶ 104} Between the date this mandamus action was filed and the date of oral argument, the Supreme Court of Ohio issued its decision in *State ex rel. Smith v. Indus. Comm.,* 138 Ohio St.3d 312, 2014-Ohio-513. In that case, George Smith suffered anoxic

No. 13AP-1024

brain damage during surgery to repair an inguinal hernia caused by a 1995 work-related injury. Smith never returned to work. In 1998, he was awarded permanent total disability compensation and, in 2004, the commission granted his motion for scheduled loss of use awards for the loss of use of his arms and legs.

{¶ 105} In 2009, relator filed a motion seeking the scheduled loss of use award for both ears and eyes. The commission denied the motion and ultimately, the commission's decision was upheld. As the Supreme Court noted, the medical evidence showed that Smith's eyes and ears were not damaged. Instead, because of the anoxic brain damage, the signals the eyes and ears received could not be processed by his brain. Because there were no tests which could be performed to determine whether or not Smith had any loss of sight or hearing and because the medical evidence showed Smith suffered from a loss of brain stem functioning and not damage to either his eyes or ears, the court found that the commission did not abuse its discretion.

{¶ 106} At oral argument, relator asked the magistrate to consider the implication of the *Smith* case to the facts involving decedent. For the reasons that follow, the magistrate finds the court's rationale from *Smith* does not apply here.

{¶ 107} As noted, there was no medical evidence that Smith had sustained any damage to either his eyes or ears. Instead, the medical evidence indicated that Smith's brain could not process the visual and auditory impulses being received by his eyes and ears. By comparison, the medical evidence here indicates that decedent sustained "extensive destruction of cortical tissue" and, in his right eye, he suffered a "large displacing hematoma that would have further diminished any ability for useful visual function." (Report of Dr. Cameron.) The medical evidence also showed decedent had "severe damage to the supporting structures of the auditory apparatus." (Report of Dr. Cameron.) Unlike the evidence in *Smith,* there is medical evidence here indicating significant damage not only to decedent's brain, but to both his eyes and ears. Even though decedent's lack of consciousness made it impossible to determine the exact extent of his visual and auditory losses, there is medical evidence that those organs were significantly damaged. As such, the magistrate disagrees with relator's opinion that *Smith* requires a different result here.

No. 13AP-1024

## CONCLUSION

{¶ 108} Upon review of the statutes and case law, the magistrate concludes the commission did abuse its discretion in awarding claimant 1,225 weeks of scheduled loss compensation as that is contrary to the provisions of R.C. 4123.60 and relevant case law. As such, the magistrate concludes this court should issue a writ of mandamus ordering the commission to vacate its award of 1,225 weeks of scheduled loss compensation and determine the amount of compensation which is due to claimant.

/S/ MAGISTRATE
STEPHANIE BISCA BROOKS

## NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).