THE STATE EX REL. ESTATE OF MCKENNEY, APPELLANT, *v.*
INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Estate of McKenney v. Indus.
Comm.,* 110 Ohio St.3d 54, 2006-Ohio-3562.]

(No. 2005–0513—Submitted February 7, 2006—Decided July 26, 2006.)

**Per Curiam.**

{¶ 1} Patrick McKenney died while receiving weekly payments of scheduled loss compensation under R.C. 4123.57(B). His widow died after applying for a lump-sum payment of the remaining compensation. Her estate now seeks that payment. Upon review, we affirm the judgment of the court of appeals denying payment to the estate.

{¶ 2} Patrick McKenney's workers' compensation claim was allowed for quadriplegia. He successfully applied for permanent total disability benefits and was also awarded 850 weeks of scheduled loss benefits under R.C. 4123.57(B) for the loss of use of all four limbs.

{¶ 3} After six weeks of payment, Patrick died of an injury-related heart attack on March 15, 2002. On April 26, 2002, his surviving spouse and sole dependent, Nancy, moved appellee Industrial Commission of Ohio for a lump-sum payment of the remaining 844 weeks of scheduled loss compensation. The next day, Nancy died. Her estate, the appellant herein, was then substituted as a party for the purposes of pursuing her motion.

{¶ 4} On October 3, 2003, the commission awarded the estate scheduled loss benefits only through April 27, 2002, the date of Nancy's death. It reasoned:

{¶ 5} "R.C. 4123.57(B) provides for an award of compensation for loss of use to the surviving spouse of the injured worker of such compensation accrued during the injured worker's lifetime and that which would have accrued had the *injured worker* survived. The statute makes no such award for compensation that will not accrue until after the death of the surviving spouse or any eligible dependent. Therefore, when Nancy McKenney died on 04/27/2002, the unaccrued loss of use benefits were no longer payable in the absence of an eligible dependent to whom a further award could be made. The plain language of R.C. 4123.57(B) makes it clear that the surviving spouse's entitlement to the loss of use benefits abates upon her death and no further benefits are payable. The Industrial Commission declines the invitation to rewrite the statute and pay compensation beyond what the legislature intended." (Emphasis sic.)

{¶ 6} The estate responded with a mandamus action in the Court of Appeals for Franklin County, seeking a writ ordering the commission to pay the estate the amount it sought. The court of appeals affirmed the commission's reasoning and denied the writ, prompting the estate's appeal as of right.

{¶ 7} No one challenges the estate's entitlement to some portion of the scheduled loss award. At issue is the amount thereof, and, in this regard, prior case law is clear—a dependent's estate can recover only compensation that had accrued to the dependent before the dependent's death but that had not been paid. *Indus. Comm. v. Dell* (1922), 104 Ohio St. 389, 135 N.E. 669; *State ex rel. Hoper v. Indus. Comm.* (1934), 128 Ohio St. 105, 190 N.E. 222; *State ex rel. Nossal v. Terex Div. of I.B.H.* (1999), 86 Ohio St.3d 175, 712 N.E.2d 747.

{¶ 8} R.C. Chapter 4123 does not define "accrued," leaving the term to its "usual, normal, or customary meaning." *State ex rel. Bowman v. Columbiana Cty. Bd. of Commrs.* (1997), 77 Ohio St.3d 398, 400, 674 N.E.2d 694. That definition, however, does not advance resolution of the issue, since the term is defined as "to come into existence as an enforceable claim: vest as a right." Webster's Third New International Dictionary (1986) 13. Precisely *when* the interest at issue becomes an enforceable claim or right—the question here—is not answered by the definition.

{¶ 9} The estate claims that the entire amount of the scheduled loss award accrued to Nancy at Patrick's death. R.C. 4123.57(B) does not support this assertion. The relevant passage provides:

{¶ 10} "When an award under this division has been made prior to the death of an employee all unpaid installments accrued or to accrue under the provisions of the award shall be payable to the surviving spouse, or if there is no surviving spouse, to the dependent children of the employee and if there are no such children, then to such dependents as the administrator determines."

{¶ 11} The estate's reliance on the mandatory "shall" is misplaced, because the mandate presumes a living dependent, which is not the case here. Moreover, the statute specifically refers to installments "accrued *or to accrue.*" (Emphasis added). If the entire amount accrued immediately, as the estate claims, there would be no need for this language. The estate's interpretation of the statute is, therefore, rendered untenable by the statute's very language.

{¶ 12} The estate's position is also not advanced to the extent it hoped by the concurring opinion in *LaCavera v. Cleveland Elec. Illum. Co.* (1984), 14 Ohio App.3d 213, 217–218, 14 OBR 240, 470 N.E.2d 476 (Markus, J., concurring). The estate relies on this passage:

{¶ 13} "No real distinction exists between unpaid compensation for temporary disability and unpaid dismemberment compensation under R.C. 4123.57(C) [now 4123.57(B) ]. Additional compensation accrues for temporary disability when the worker's temporary disability continues or he incurs additional medical expenses. R.C. 4123.56 and 4123.66. Therefore, no further compensation can accrue for a temporary disability or additional medical expense after the worker dies.

{¶ 14} "By contrast, compensation for dismemberment under R.C. 4123.57(C) is fully determined when the dismemberment occurs. The total compensation payable under R.C. 4123.57(C) is *measured* as a fixed multiple of the worker's 'average weekly wage' rate, as defined by the Revised Code. However, the 'accrued' compensation is payable by a lump sum disbursement or by weekly installments as the Industrial Commission deems appropriate. R.C. 4123.64. Thus, the total compensation for dismemberment under R.C. 4123.57(C) is 'accrued but unpaid' immediately after the dismemberment occurs." (Emphasis sic.)

{¶ 15} According to the estate, the *LaCavera* concurrence supports the notion that scheduled loss compensation is unique and should be unfettered by the principles governing other forms of compensation upon the death of a relevant party. Larson, however, in his treatise, Workers' Compensation Law (2001), cautions against undue reliance on the supposed uniqueness of scheduled loss compensation, reminding that those benefits are "not, however, to be interpreted as an erratic deviation from the underlying principle of compensation law—that benefits relate to loss of earning capacity and not to physical injury as such. The basic theory remains the same; the only difference is that the effect on earning capacity is a conclusively conclusively [sic] presumed one * * *." (Footnote omitted.) 4 Larson, Section 86.02.

{¶ 16} It therefore follows that the loss of earning capacity that scheduled loss compensation was intended to ameliorate ceases upon the death of the injured worker—just as it does with all other forms of disability compensation.

{¶ 17} Perhaps a more problematic aspect of the *LaCavera* concurrence is its offhand equation of lump-sum and installment payments. Larson advises that "[w]hen the award takes the form of a lump sum, the amount due as accrued payments is the entire amount of the lump sum." Section 89.02. Alabama's highest court speaks for the majority of jurisdictions—including Ohio—that endorse this result, in writing that "when there is a lump sum [workers' compensation] award it has the same effect as the usual judgment for money, that is, it becomes vested on rendition of the judgment." *U.S. Steel Corp. v. Baker* (1957), 266 Ala. 538, 543, 97 So.2d 899.

{¶ 18} This is an interesting analogy because, as Larson points out, "one of the features distinguishing a compensation award from a tort recovery is the absence of any property right in an award which can survive in favor of heirs." Section 89.01. Thus, "[t]he recipient of installment payments does not ordinarily 'own' the unpaid balance of the award so as to entitle his heirs as such to any interest in it." 1 Larson, Section 1.03[6]. This prompts Larson to conclude that when a scheduled loss award, "although for a fixed number of weeks, is paid weekly or periodically, most jurisdictions in the absence of a special statute to the contrary have held that the heirs have no claim upon the unaccrued payments, since the award is a personal one." (Footnote omitted.) 4 Larson, Section 89.03. By "unaccrued," Larson means the weekly payments that would have come due after the death. Section 89.01.

{¶ 19} R.C. 4123.57(B) anticipates the payment of scheduled loss compensation in weekly installments. Commutation to a lump sum can occur, but only if the injured worker first applies for lump-sum payment, meets certain specified criteria designated in R.C. 4123.64, and receives approval from the bureau. The specificity of those criteria—and the fact that satisfaction still does not guarantee approval by the bureau—demonstrates that the method of payment is of substantive concern to the General Assembly and should not be summarily dismissed as irrelevant to our inquiry as the *LaCavera* concurrence—and in turn, the estate—suggests.

{¶ 20} We, too, have acknowledged the substantive, as opposed to simply ministerial, nature of the payment method in a scheduled loss situation. In *Swallow v. Indus. Comm.* (1988), 36 Ohio St.3d 55, 57, 521 N.E.2d 778, we approved the commission's "rationale that claimants are generally placed in a better position by receiving payments consecutively rather than concurrently." We held that it was within the discretion of the commission to determine that appellant would be put in a better position by receiving 850 weeks of payments consecutively rather than two 200–week periods of payments for the loss of his legs and two 250–week periods of payments for the loss of his arms, all concurrently.

{¶ 21} The estate claims that to deny full recovery offends equal protection because state-fund and self-insured employees will be treated differently. The estate, however, never develops this argument, using it instead as a forum for objecting to the commission's decision to deny lump-sum payment in favor of installment payments—an action expressly within the commission's discretion, and irrelevant to the employee's status as a self-insured or state-fund employee.

{¶ 22} In the end, the estate has not offered a compelling reason why we should deviate from prior decisions limiting the dependent's estate to those amounts actually due, but unpaid, to the dependent before his or her death. In this case, the commission, after careful consideration, specifically denied a request for lump-sum payment because no further award was payable whether by installment or lump sum.

{¶ 23} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., concurs in judgment only.

———

Robert E. Gross and Scott Coghlan, for appellant.

Jim Petro, Attorney General, and William J. McDonald, Assistant Attorney General, for appellee Industrial Commission.

Duvin, Cahn & Hutton and Christine C. Covey, for appellee Wal–Mart Stores, Inc.

Philip J. Fulton Law Office, Philip J. Fulton, and William A. Thorman III, urging reversal on behalf of amicus curiae, Ohio Academy of Trial Lawyers.