THE STATE EX REL. MOOREHEAD, APPELLANT, *v.* INDUSTRIAL
COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Moorehead v. Indus. Comm.,*
112 Ohio St.3d 27, 2006-Ohio-6364.]

(No. 2005–1121—Submitted May 24, 2006—Decided December 20, 2006.)

MOYER, C.J.

{¶ 1} William Moorehead fell approximately 15 to 20 feet head first onto a concrete floor while working on a raised platform at his job site. Upon impact he suffered severe spinal cord and other injuries. Unrebutted evidence established that the spinal cord injury rendered him a quadriplegic.[1] William never regained consciousness and died 90 minutes after the fall.

{¶ 2} His widow, appellant Sandra Moorehead, applied for death benefits. Pursuant to R.C. 4123.57(B), she also applied for scheduled loss compensation based on William's loss of use of both arms and legs.

{¶ 3} The Industrial Commission denied the application for scheduled loss compensation, observing that scheduled loss benefits may be awarded only to

---

1. A hospital radiologist who reviewed the worker's x-rays observed "disassociation of the normal articulation between the skull and 1st cervical segment with significant gaping indicative of severe cord injury." Several medical doctors opined that these injuries are consistent with a diagnosis of quadriplegia.

injured workers who both experience a physical and sustained loss of use and also consciously perceive and experience the physical suffering and hardship caused by the loss of use of a body part in the period between the injury and death. The commission stated that "the widow-claimant's application for such benefits must fail, as the decedent did not sustain the loss of his extremities, because he was comatose, and completely unaware of the extent of injuries, for the brief period between the accident and his death."

{¶ 4} The Court of Appeals for Franklin County denied appellant's petition for a writ of mandamus ordering the payment of scheduled loss benefits.

{¶ 5} The cause is now before this court on an appeal as of right.

{¶ 6} The court of appeals deferred to the commission's interpretation that "loss of use" does not occur when an injured worker "survives an industrial injury in an unconscious state for only a brief period and never actually experiences the disabling effects of the injury." We disagree.

{¶ 7} R.C. 4123.57 provides that compensation is payable to an employee when the employee suffers the loss of a body part that is listed on a schedule set forth in the statute. R.C. 4123.57(B) provides:

{¶ 8} "In cases included in the following schedule the compensation payable per week to the employee is the statewide average weekly wage * * * and shall continue during the periods provided in the following schedule:

{¶ 9} "* * *

{¶ 10} "For the loss of an arm, two hundred twenty-five weeks.

{¶ 11} "* * *

{¶ 12} "For the loss of a leg, two hundred weeks."

{¶ 13} This court has held that "loss" as used in R.C. 4123.57(B) is equivalent to "loss of use," *State ex rel. Gassmann v. Indus. Comm.* (1975), 41 Ohio St.2d 64, 70 O.O.2d 157, 322 N.E.2d 660 (construing the predecessor statute), and that compensation is payable for loss of a limb through amputation and for permanent and total loss of use due to paralysis, because such loss constitutes a loss " '[f]or all practical purposes * * * to the same effect and extent as if [the limb] had been amputated or otherwise physically removed,' " *State ex rel. Walker v. Indus. Comm.* (1979), 58 Ohio St.2d 402, 403–404, 12 O.O.3d 347, 390 N.E.2d 1190, quoting *Gassmann* at 67, 70 O.O.2d 157, 322 N.E.2d 660.

{¶ 14} The commission concluded that the decedent's loss of use "was contingent upon his survival." It further concluded that the "decedent did not survive." But Moorehead did survive the fall, albeit for only a short period, as it is undisputed that he did not die upon impact. R.C. 4123.57(B) does not specify a required length of time of survival after a loss-of-use injury before benefits pursuant to R.C. 4123.57(B) are payable.

{¶ 15} We have long recognized that neither administrative agencies nor this court "may legislate to add a requirement to a statute enacted by the General Assembly." *Wheeling Steel Corp. v. Porterfield* (1970), 24 Ohio St.2d 24, 27–28, 53 O.O.2d 13, 263 N.E.2d 249. Rather, in interpreting statutes "it is the duty of this court to give effect to the words used, not to delete words used or to insert words not used." *Columbus–Suburban Coach Lines, Inc. v. Pub. Util. Comm.* (1969), 20 Ohio St.2d 125, 127, 49 O.O.2d 445, 254 N.E.2d 8. We therefore cannot condone the commission's addition of a requirement that a worker survive for some extended period of time, left unspecified by the commission or the General Assembly, when considering the worker's entitlement to a scheduled loss benefit.

{¶ 16} Similarly, there is no language in R.C. 4123.57(B) requiring that an injured worker be consciously aware of his paralysis in order to qualify for scheduled loss benefits. In an analogous case the Supreme Court of New Hampshire considered a scheduled loss application filed on behalf of a worker whose injury left him in an irreversible vegetative state. *Corson v. Brown Prods., Inc.* (1979), 119 N.H. 20, 397 A.2d 640. The application was denied administratively solely because Corson's vegetative state made him unaware of his loss. The New Hampshire Supreme Court vacated that decision and awarded scheduled loss compensation, writing:

{¶ 17} "What is of paramount importance in this case is that words such as 'awareness' or 'consciousness' cannot be added under the guise of legislative history to a statute which clearly states that '[t]he scheduled awards under this section accrue to the injured employee simply by virtue of the loss or loss of the use of a member of the body.' * * * When the language used in a statute is clear and unambiguous, its meaning is not subject to modification by construction." Id., 119 N.H. at 23, 397 A.2d 640.

{¶ 18} The same rule of statutory construction applies here. When "the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.* (1996), 74 Ohio St.3d 543, 545, 660 N.E.2d 463. R.C. 4123.57(B) does not say that compensation is dependent upon a claimant's conscious awareness of his or her loss, whether resulting from amputation or paralysis. Rather, where the requisite physical loss has been sustained, the statute directs that scheduled loss compensation shall be paid.

{¶ 19} This court should not graft duration-of-survival or cognizance requirements to R.C. 4123.57(B), because the statute has no text imposing them. Public-policy arguments relative to the requisites of scheduled loss benefits pursuant to R.C. 4123.57 are better directed to the General Assembly, including arguments that a specified time of survival should be mandated after a paralyzing injury and

that a worker be cognizant of his or her loss before loss-of-use benefits are payable.

{¶ 20} The appellant proffered medical evidence establishing that William Moorehead sustained the physical loss of use of his limbs as a result of his fall. Consciousness of that loss during an extended period of survival is not required by R.C. 4123.57(B), and the commission therefore incorrectly applied the statute when it denied the appellant's application on that basis.

{¶ 21} We deem it appropriate that the commission determine in the first instance the amount of benefits due the appellant. That determination should be made in light of all relevant statutes[2] and precedent, including our recent decision in *State ex rel. Estate of McKenney v. Indus. Comm.*, 110 Ohio St.3d 54, 2006-Ohio-3562, 850 N.E.2d 694.

{¶ 22} The writ is therefore allowed and the cause remanded for determination by the commission of the amount of scheduled loss benefits due the appellant.

Judgment reversed<br>and writ allowed.

RESNICK, PFEIFER, O'CONNOR and LANZINGER, JJ., concur.

LUNDBERG STRATTON and O'DONNELL, JJ., concur separately.

---

LUNDBERG STRATTON, J., concurring.

{¶ 23} I concur in the holding that R.C. 4123.57(B) does not support the commission's reasons for denying Sandra Moorehead's application for scheduled loss benefits, and I agree with the decision to remand this cause for a determina-

---

2. {¶ a} Appellant, a surviving spouse, cited R.C. 4123.60 in her application for an award of scheduled loss benefits. It provides:

{¶ b} "If the decedent would have been lawfully entitled to have applied for an award at the time of his death the administrator may, after satisfactory proof to warrant an award and payment, award and pay an amount, not exceeding the compensation which the decedent might have received, but for his death, for the period prior to the date of his death, to such of the dependents of the decedent * * * as the administrator determines in accordance with the circumstances in each such case, but such payments may be made only in cases in which application for compensation was made in the manner required by this chapter, during the lifetime of such injured or disabled person, or within one year after the death of such injured or disabled person."

{¶ c} R.C. 4123.57(B) itself is also relevant to a claim by a surviving spouse. It provides:

{¶ d} "When an award under this division has been made prior to the death of an employee all unpaid installments accrued or to accrue under the provisions of the award shall be payable to the surviving spouse * * *.

{¶ e} "When an employee has sustained the loss of a member by severance, but no award has been made on account thereof prior to the employee's death, the administrator shall make an award in accordance with this division for the loss which shall be payable to the surviving spouse [or to dependents]."

tion of the amount of benefits due Moorehead in light of *State ex rel. Estate of McKenney v. Indus. Comm.,* 110 Ohio St.3d 54, 2006-Ohio-3562, 850 N.E.2d 694. However, because the courts below did not have the benefit of *McKenney,* I write separately to explain why I believe that it and the relevant statutory authority limit Moorehead's award to one week of scheduled loss benefits.

{¶ 24} Sandra Moorehead was awarded death benefits under R.C. 4123.59, which authorizes payment of benefits to dependents of any employee who dies as a result of a workplace injury or occupational disease. These benefits are intended to compensate for the loss of wages and are calculated at a percentage of the average weekly wage. The award is paid from the employee's date of death until the death or remarriage of the dependent spouse. R.C. 4123.59(B)(1).

{¶ 25} Scheduled loss benefits under R.C. 4123.57(B) are intended to compensate for an injured worker's presumed loss of earning capacity. *McKenney,* 110 Ohio St.3d 54, 2006-Ohio-3562, 850 N.E.2d 694, ¶ 16. A scheduled loss award conclusively presumes that the loss of a member has an effect on one's earning capacity. Id. at ¶ 15. However, this presumption is rebutted when the worker dies, for there is no longer an earning capacity to be impaired.

{¶ 26} R.C. 4123.57(B) authorizes an award of scheduled loss benefits to the surviving spouse when an employee has sustained a loss but the employee dies before the award is made. R.C. 4123.60 authorizes a surviving spouse to apply for and receive, in addition to death benefits, an award for compensation that the decedent would have been lawfully entitled to apply for at the time of his death. The amount of the award, however, may not exceed the compensation that the decedent might have received for the period prior to the date of death. Thus, R.C. 4123.60 appears to limit the surviving spouse's recovery of benefits other than compensation for death to an amount not exceeding what the decedent might have received for the period prior to his death.

{¶ 27} The difficulty in this case is the application of these statutes, i.e., whether R.C. 4123.57(B) contemplates a scheduled loss award when the injured worker survived his injuries only briefly, or whether the General Assembly intended death benefits to compensate the surviving dependents under these circumstances.

{¶ 28} We addressed payment of scheduled loss benefits to a surviving spouse in *McKenney.* Patrick McKenney, a quadriplegic, had been awarded 850 weeks of scheduled loss benefits under R.C. 4123.57(B), payable in weekly installments. He died after six weeks of payment. His surviving spouse and sole dependent, Nancy, moved for a lump sum payment of the remaining 844 weeks of compensation. Nancy McKenney died one day later. Her estate pursued her motion, claiming that the entire amount of the scheduled loss award accrued to Nancy at Patrick's death.

{¶ 29} We did not agree that McKenney was entitled to the entire award upon Patrick's death. Scheduled loss benefits, like most other forms of workers' compensation, compensate for a loss of earning capacity. "It therefore follows that the loss of earning capacity that scheduled loss compensation was intended to ameliorate ceases upon the death of the injured worker—just as it does with all other forms of disability compensation." Id. ¶ 16. R.C. 4123.57(B) anticipates the payment of scheduled loss compensation in weekly installments, which may be commuted to a lump sum under certain circumstances and only if the injured worker applies. R.C. 4123.64.

{¶ 30} Consequently, I believe that Moorehead may be entitled to one week of scheduled loss benefits under R.C. 4123.57(B) to compensate for her husband's period of survival.[1] The issue of consciousness is immaterial. But the presumed loss of earning capacity ceased upon William Moorehead's death. At that point, Sandra Moorehead became entitled to apply for death benefits under R.C. 4123.59. I do not believe that the General Assembly intended for duplicate awards under these circumstances.

{¶ 31} Finally, I believe that an award of scheduled loss benefits under these circumstances has potential long-term financial ramifications. A successful scheduled loss application, depending on the extent of injury, can generate huge sums of money costing the State Fund and self-insured employers millions of dollars. In this case, Moorehead seeks the full award of 850 weeks. If scheduled loss benefits are awarded no matter how short the employee's survival, this will likely encourage the dependent of any employee who dies in close proximity to an industrial injury to file for scheduled loss compensation. Such an award would have unintended results that would be financially devastating for the State Fund or a self-insured employer. I do not believe that the General Assembly intended R.C. 4123.57(B) to provide what would be the equivalent of an award of damages for personal injury.

O'DONNELL, J., concurs in the foregoing opinion.

———————

Stocker Pitts Co., L.P.A., M. Scott Kidd, and Thomas R. Pitts, for appellant.

Jim Petro, Attorney General, and William J. McDonald, Assistant Attorney General, for appellee Industrial Commission.

Philip J. Fulton Law Office, Philip J. Fulton, and William A. Thorman III, urging reversal for amicus curiae Ohio Academy of Trial Lawyers.

———————

1. Because R.C. 4123.57(B) authorizes payment on a weekly basis, the claimant would be paid one week of compensation for a period of 90 minutes' loss of earning capacity.

Garvin & Hickey, L.L.C., Preston J. Garvin, and Michael J. Hickey, urging affirmance for amicus curiae Ohio Chamber of Commerce.

Bricker & Eckler, L.L.P., and Thomas R. Sant, urging affirmance for amici curiae Ohio Chapter of the National Federation of Independent Business and Ohio Manufacturers' Association.

Vorys, Sater, Seymour & Pease, L.L.P., Robert A. Minor, and Robin Obetz, urging affirmance for amicus curiae Ohio Self–Insurers' Association.