[Cite as *State ex rel. Waste Mgt. of Ohio, Inc. v. Indus. Comm.*, 2021-Ohio-2478.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel.                                                              :
Waste Management of Ohio, Inc.,
                                                                          :
            Relator,
                                                                          :
v.                                                                                      No.  19AP-453
                                                                          :
Industrial Commission of Ohio et al.,                                   (REGULAR CALENDAR)
                                                                          :
            Respondents.
                                                                          :


D E C I S I O N

Rendered on July 20, 2021


**On brief:** *Dinsmore & Shohl LLP*, and *Brian P. Perry*, for
relator.

**On brief:** *Dave Yost*, Attorney General, and *Natalie J.
Tackett*, for respondent Industrial Commission of Ohio.

**On brief:** *Paul W. Flowers Co.*, *L.P.A.*, *Paul W. Flowers,* and
*Louis E. Grube*, for respondents Sabrina Gelhausen and
Taylor Alloway.


IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

MENTEL, J.

{¶ 1} Relator, Waste Management of Ohio, Inc., filed this original action
requesting this court issue a writ of mandamus ordering respondent, the Industrial
Commission of Ohio ("commission"), to vacate its order exercising continuing jurisdiction
and awarding loss-of-use benefits to respondents, Sabrina Gelhausen and Taylor Alloway,
in addition to the death benefits provided to Sabrina Gelhausen from the death of her
father, Travis Gelhausen.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate. On January 25, 2021, the magistrate issued a decision, including findings of fact and conclusions of law, appended hereto. The magistrate concluded that relator's request for a writ of mandamus should be denied as there was some evidence to support the commission's allowance of continuing jurisdiction in the case based on a clear mistake of law and some evidence to support the loss-of-use award for the decedent's injuries. On February 5, 2021, relator filed three objections to the magistrate's decision. On March 5, 2021, the commission filed its response and request to overrule relator's objections. Sabrina Gelhausen and Taylor Alloway also filed a memorandum in opposition to relator's objections to the magistrate's decision on March 5, 2021.

{¶ 3} When objections are filed to a magistrate's decision, we must undertake an independent review of the objected matters "to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). As none of the parties have objected to the magistrate's findings of fact, we adopt them as our own.

{¶ 4} Mandamus relief is only appropriate if the relator establishes " 'a clear legal right to the relief requested, a clear legal duty on the part of the commission * * * to provide the relief, and the lack of an adequate remedy in the ordinary course of the law.' " *State ex rel. Franta v. Indus. Comm.*, 10th Dist. No. 19AP-530, 2021-Ohio-1501, ¶ 4, quoting *State ex rel. Baker v. Indus. Comm.*, 143 Ohio St.3d 56, 2015-Ohio-1191, ¶ 12. "In matters before it, the commission is the exclusive evaluator of the weight and credibility of the evidence." *State ex rel. Navistar, Inc. v. Indus. Comm.*, 160 Ohio St.3d 7, 2020-Ohio-712, ¶ 13, citing *State ex rel. LTV Steel Co. v. Indus. Comm.*, 88 Ohio St.3d 284, 287, 2000-Ohio-328. Accordingly, relator must demonstrate by clear and convincing evidence the commission abused its discretion submitting an order not supported by any evidence in the record. *Navistar* at ¶ 13, quoting *State ex rel. WFAL Constr. v. Buehrer,* 144 Ohio St.3d 21, 2015-Ohio-2305, ¶ 12.

{¶ 5} Abuse of discretion goes beyond an error of law but suggests that the decision was unreasonable, arbitrary, or unconscionable. *State ex rel. Dreamer v. Mason*, 115 Ohio St.3d 190, 2007-Ohio-4789, ¶ 18, citing *State ex rel. Worrell v. Ohio Police &*

*Fire Pension Fund*, 112 Ohio St.3d 116, 2006-Ohio-6513, ¶ 10. "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." (Emphasis sic.) *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

{¶ 6} Relator first objects to the magistrate's decision arguing that the commission lacked continuing jurisdiction in this case based on a clear mistake of law. Pursuant to R.C. 4123.52(A), "[t]he jurisdiction of the industrial commission * * * over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." Continuing jurisdiction is only allowed when there is evidence to support " '(1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by [an] inferior tribunal.' " *State ex rel. Neitzelt v. Indus. Comm.*, 160 Ohio St.3d 175, 2020-Ohio-1453, ¶ 11, quoting *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 458-59 (1998). When one or more of these circumstances is recognized, the error must be "identified and explained." *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990, ¶ 15.

{¶ 7} In *State ex rel. Neitzelt*, the Supreme Court of Ohio considered whether the commission properly asserted continuing jurisdiction based on a clear mistake of fact. The *Neitzelt* court explained the standard of review on this issue writing:

> Having concluded that the commission's exercise of its continuing jurisdiction was timely, we proceed to consider [appellee's] claim that the commission abused its discretion when it found that [appellant] established both new or changed circumstances and a mistake of fact. In making this determination, we apply a deferential standard: we will not order the commission to vacate its decision if the decision is supported by some evidence. *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, 134 N.E.3d 1185, ¶ 17. Evaluation of the weight and credibility of the evidence is the exclusive province of the commission, which " 'has substantial leeway in both interpreting and drawing inferences from the evidence before it.' " *Id.* at ¶ 30, quoting *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, 817 N.E.2d 880, ¶ 34.

*Id.* at ¶ 23.

{¶ 8}   The *Neitzelt* court ultimately concluded "the commission did not abuse its discretion by concluding that [appellant] established the existence of a mistake of fact." *Id.* at ¶ 27; s*ee also State ex rel. Sheppard v. Indus. Comm.*, 139 Ohio St.3d 223, 2014-Ohio-1904, ¶ 22 (finding "the commission did not abuse its discretion when it determined that the hearing officer's failure to address the intervening-injury argument was a mistake of law that justified the commission's reopening the claim to examine the issue"); *State ex rel. Holdren v. Indus. Comm.*, 105 Ohio St.3d 291, 2005-Ohio-1734, ¶ 16-17, citing *Gobich* (writing that in *Gobich*, "the commission ultimately granted [reconsideration] on the basis that the SHO's order was based on 'clear mistakes of law.' We, however, found an abuse of discretion."); *State ex rel. Crisp v. Indus. Comm. & Cedar Fair LP*, 10th Dist. No. 10AP-438, 2012-Ohio-2077 (adopting the magistrate's decision that found "the exercise of continuing jurisdiction amounted to an abuse of discretion").

{¶ 9}   While relator's objection is limited to the magistrate's finding that the commission did not abuse its discretion exercising continuing jurisdiction based on a clear mistake of law, we must also examine the commission's determination that there was a clear mistake of fact as relator's complaint in mandamus asserts both grounds for continuing jurisdiction were erroneously decided. For ease of discussion, we will first consider whether appellant properly invoked continuing jurisdiction based on a clear mistake of fact.

{¶ 10} The evidence is this case is largely not in dispute. Jolene Szapowal, the only witness to the accident, attested through a sworn affidavit as follows:

> I was traveling behind a waste management garbage truck driven by Travis Gelhausen * * * [a]fter witnessing the crash, I parked my vehicle and attempted to administer aid to Mr. Gelhausen, the driver of the garbage truck. * * * When I approached the garbage truck I could see Mr. Gelhausen from his ribs to his knees and could see that he was still breathing.

 (Stip.R. at 49.)

{¶ 11} Szapowal continued stating that Gelhausen was breathing for approximately three minutes before he ultimately expired. Dr. Donato J. Borrillo provided a medical opinion in this case determining that Gelhausen's brief period of breathing was

"consistent with still being alive." (Stip.R. at 56.) Borillo also found that decedent's loss of function in his extremities would have been permanent given the nature of the injuries to the cervical spine. The report by Dr. Paul T. Hogya stated that Gelhausen's breathing is known as "agonal respiration" and was not "adequate respiration to sustain oxygenation." (Stip.R. at 52.) Hogya continued stating "[a]t no time would Mr. Gelhausen have been conscious with these actual injuries to even appreciate any alleged loss of use of his right or left arm." (Stip.R. at 52.) The physicians reviewed the competing reports and provided addenda in response. Borrillo wrote that a layperson can recognize the act of breathing and that while agonal respiration can be a sign of impending death that does not change the fact that decedent was alive and breathing after the accident. In his addendum, Hogya wrote "whether or not [Gelhausen] is considered to have been 'alive' for three minutes or less, there was no conscious ability for him to recognize or appreciate a total loss of use of the upper and lower extremities and/or vision." (Stip.R. at 60.) Hogya dismissed Szapowal's first-hand account concluding "Szapowal estimated some three minutes of breathing. From a clinical standpoint, these estimates must always be considered with 'a grain of salt' due to the stressful emergency nature of the situation. For instance, that is why estimates of seizure activity are notoriously inaccurate." (Stip.R. at 60.)

{¶ 12} The district hearing officer ("DHO") denied the loss-of-use awards finding that "decedent essentially experienced instantaneous death." (Stip.R. at 3.) While the DHO acknowledged Szapowal's affidavit states that decedent "was alive and breathing for approximately a three minute period," he disregarded the affidavit on the basis that it was not from a "medical professional." (Stip.R. at 2.) On appeal, the staff hearing officer ("SHO") denied Gelhausen's loss-of-use award concluding "[d]ecedent did not survive the accident when he died at the scene and pronounced dead immediately after being removed from the vehicle." (Stip.R. at 6.) The SHO wrote that, the statement by Szapowal was unpersuasive because an "affidavit of the non-medical bystander fails to medically establish that the [d]ecedent survived this accident." (Stip.R. at 6.) The initial appeal was refused in an order mailed November 1, 2018.

{¶ 13} The claimants filed a motion for reconsideration which the commission found that the matter should be reviewed for continuing jurisdiction based on a clear mistake of fact and law. By order mailed on March 27, 2019, the commission granted

claimants' motion for reconsideration concluding there was a clear mistake of fact as decedent had survived for at least three minutes after the accident. The commission also found the SHO made a clear mistake of law by failing to properly apply *State ex. rel. Moorehead v. Indus. Comm.*, 112 Ohio St.3d. 27, 2006-Ohio-6364, to the facts of the case.

{¶ 14} After a careful review of the record, we find the commission did not abuse its discretion invoking continuing jurisdiction based on a clear mistake of fact. As explained by the commission, the SHO made a clear mistake of fact stating that the decedent died in the accident when he had, in fact, survived for three minutes after the accident.[1] This conclusion is well supported in the record. Szapowal's affidavit provided a first-hand account of the accident that stated the decedent was breathing for approximately three minutes before he expired. Based on the nature of the decedent's injuries, Borillo was able to provide a medical opinion that the decedent's "cervical injury correlates with the witness statement and affidavit of Ms. Szapowal who found the injured worker still breathing at the accident scene * * *. His brief period of breathing is consistent with still being alive, as his autopsy did not reveal a decapitation or crush injury of the head." (Stip.R. at 55-56.) While Hogya reached a contrary conclusion, he stated that the decedent was exhibiting agonal breathing. "Agonal" is defined in the Merriam-Webster dictionary as "of, relating to, or associated with the act of dying: occurring just before death." (Stip.R. at 63.)[2] There is no doubt that agonal breathing "carries a poor prognosis and is an indicator of impending death." (Stip.R. at 63.) However, "impending death" does not equate to actual death. As such, even accepting that decedent was exhibiting agonal breathing, despite competing medical evidence from Borillo, there is no dispute among the medical experts that decedent was breathing in some capacity for approximately three minutes after the accident.

{¶ 15} Given the only witness to the accident attested to observing the decedent breathing for three minutes and Borillo concluded decedent's breathing was consistent

---

[1] The SHO disregarded the witness's account on the basis that a "non-medical bystander fails to medically establish that the Decedent survived this accident." (Stip.R. at 6.) As noted by Borillo, a lay witness is more than capable of identifying whether someone is breathing or not. Moreover, there is no statutory basis to support the SHO's conclusion that an on-site medical evaluation is required. Such an interpretation would result in denying valid claims if a medical professional is not present at the time of an accident.

[2] The example provided in the definition is also instructive: "Kennedy had a very weak pulse and was experiencing what's called agonal breathing, labored, gasping, the body's final attempts to sustain life." (Stip.R. at 63.)

with still being alive, however briefly, after the accident, the commission did not abuse its discretion concluding that the SHO made a clear mistake of fact decedent died instantaneously in the accident. Regardless of whether we would have found that reasoning persuasive and reached the same result, the commission's conclusion that there was a clear mistake of fact is not unreasonable.

{¶ 16} Next, we must consider whether the commission abused its discretion in exercising continuing jurisdiction that there was a clear mistake of law by the SHO in its application of *Moorehead.* A brief review of *Moorehead* is instructive.

{¶ 17} In *Moorehead*, the decedent fell from a raised platform suffering spinal cord injuries. Decedent was rendered a quadriplegic and never regained consciousness after the fall. The decedent died 90 minutes after the accident. The commission denied the decedent's widow's scheduled loss compensation on the basis that the decedent could not perceive or experience the hardship that caused the loss of use between injury and death. The Supreme Court granted the writ of mandamus ordering the commission to award the loss-of-use benefits. The *Moorehead* court wrote, "[it] should not graft duration-of-survival or cognizance requirements to R.C. 4123.57(B), because the statute has no text imposing them." *Moorehead* at ¶ 19.

{¶ 18} Here, the SHO identified *Moorehead* as the correct precedent on loss-of-use benefits in cases involving death rapidly after injury and its applicability to the present case. The SHO wrote, "[*Moorehead*] indicated that R.C. 4123.57(B) does not specify a required length of time of survival after a loss-of-use injury before benefits pursuant to R.C. 4123.57(B) are payable." (Stip.R. at 6.) While the hearing officer understood the controlling case law at issue, he applied the incorrect facts to *Moorehead*, namely that decedent died instantaneously when he survived for approximately three minutes after the accident. As such, the SHO's error was not the misapplication of *Moorehead* to the facts in this case but his application of incorrect facts to *Moorehead.*

{¶ 19} Accordingly, we sustain relator's objection to the extent that the magistrate erred in finding there was some evidence to support that there was a clear mistake of law and failing to also consider whether there was a clear mistake of fact to invoke continuing jurisdiction. While we find there was no evidence to support a clear mistake of law, the commission properly invoked continuing jurisdiction based on a clear mistake of fact. As

such, regardless of its erroneous determination that there was a clear mistake of law, the commission was able to reexamine all aspects of the case and reevaluate the evidence regarding the loss-of-use benefits claim. *State ex rel. Sheppard v. Indus. Comm.*, 139 Ohio St.3d 223, 2014-Ohio-1904, ¶ 24 (finding once the commission exercises continuing jurisdiction and vacates an order it is required to reexamine all facets of claimant's eligibility for compensation).

{¶ 20} Accordingly, we sustain in part and overrule in part relator's first objection.

{¶ 21} In his second objection, relator argues the magistrate erred in finding that the commission provided an adequate explanation for continuing jurisdiction based on the SHO's mistake of law and fact. As set forth previously, once one of the prerequisites for continuing jurisdiction is identified, the commission must provide an explanation for invoking continuing jurisdiction. "It is not enough to say, for example, that there has been a clear error of law. The order must also state what that error is. This ensures that the party opposing reconsideration can prepare a meaningful defense to the assertion that continuing jurisdiction is warranted. It also permits a reviewing court to determine whether continuing jurisdiction was properly invoked." (Internal citations omitted.) *State ex rel. Gobich*, 2004-Ohio-5990, at ¶ 15.

{¶ 22} In the instant case, the commission provided an explanation for continuing jurisdiction based on the SHO's mistake of law and fact. The commission wrote in relevant part:

> 02/05/2019-After further review and discussion, it is the decision of the Commission the Dependent has met the burden of proving the Staff Hearing Officer order, issued 10/13/2018, contains a clear mistake of fact in the order from which reconsideration is sought, and a clear mistake of law of such character that remedial action would clearly follow. Specifically, the Staff Hearing Officer failed to properly apply the rule of *State ex rel. Moorehead v. Industrial Comm.*, 112 Ohio St.3d. 27, 2006-Ohio-6364, 857 N.E. 2d 1203, to the facts in this claim. Therefore, the Commission exercises continuing jurisdiction pursuant to R.C. 4123.52 and *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 692 N.E. 2nd 188 (1998), *State ex rel. Foster v. Indus. Comm.*, 85 Ohio St.3d 320, 707 N.E.2d 1122 (1999), and *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St. 3d 585, 2004-Ohio-5990, 817 N.E. 2d 398, in order to correct this error.

* * *

> The Commission also relies upon *State ex rel. Moorehead v. Indus Comm.*, supra, which held R.C. 4123.57(B) does not require any specific duration of survival after an employee suffers a loss of use, nor does it require the employee to be cognizant of the loss. The Commission finds R.C. 4123.57(B) is applicable here because the Decedent did in fact survive the injury, for at least three minutes. In support of its findings the Commission relies upon Ms. Szapowal's affidavit stating that following the injury, she saw the Decedent continue to breathe for approximately three minutes before he expired in her presence.

(Stip.R. at 13-14.)

{¶ 23} Based on the language employed by the commission, the mistake of fact was identified as the SHO's finding that the decedent did not survive the injury when he had, in fact, survived the accident for approximately three minutes. Similarly, the commission identified the mistake of law as the misapplication of *Moorehead* to the facts in the case. *Gobich* does not require the commission to provide an all-encompassing discussion regarding each mistake but only to "identif[y] and explain[]" the basis for reconsidering the initial determination of the hearing officer. *Gobich* at ¶ 15. As such, there is some evidence to support the conclusion that the commission identified and explained the bases for continuing jurisdiction. Relator's second objection is overruled.

{¶ 24} Finally, relator contends that the commission erred in awarding "850 weeks of weeks of compensation in a claim in which no loss by severance occurred." (Relator's Brief at 12.) Pursuant to R.C. 4123.57(B), the loss of a leg is paid for 200 weeks and the loss of an arm is paid for 225 weeks. In *State ex. rel Arberia, LLC v. Indus. Comm.*, 10th Dist. No. 13AP-1024, 2014-Ohio-5351, this court examined the amounts awarded for loss-of-use compensation to the survivor or dependent of a claimant when the claimant died soon after the injury. Relevant to this appeal, we rejected the requirement of severance for injured workers to have been entitled to a loss-of-use award as well as that loss of use is restricted to the period of survival regardless of whether the decedent had lived for a short period after the accident. *Arberia* at ¶ 14, 18-20. Accordingly, we agree with the magistrate's analysis that the commission did not abuse its discretion in awarding 850

weeks of compensation pursuant to R.C. 4123.57(B) and Ohio Adm.Code 4123-3-37. Relator's third objection is overruled.

{¶ 25} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objections, we find the magistrate properly determined the factual issues and appropriately applied the law, as modified herein. For the reasons set forth in the magistrate's decision and those expressed herein, relator's objections are overruled in part and sustained in part. Pursuant to Civ.R. 53(D)(4), we adopt the decision of the magistrate as our own, including findings of fact and conclusions of law, as modified by our own conclusions of law discussed in this decision. In accordance with the magistrate's recommendation, we deny relator's request for a writ of mandamus.

*Objections overruled in part and sustained in part;*
*writ of mandamus denied.*

BROWN and KLATT, JJ., concur.

_____

# A P P E N D I X

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

State ex rel.                                                 :
Waste Management of Ohio, Inc.,
                                                             :
        Relator,
                                                             :
v.                                                                      No.  19AP-453
                                                             :
Industrial Commission of Ohio et al.,                              (REGULAR CALENDAR)
                                                             :
        Respondents.
                                                             :

                                                             :

---

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on January 25, 2021

---

*Dinsmore & Shohl LLP,* and *Brian P. Perry,* for relator.

*Dave Yost,* Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

*Paul W. Flowers  Co., L.P.A., Paul W. Flowers,* and *Louis E. Grube,* for respondents Sabrina Gelhausen and Taylor Alloway.

---

### IN MANDAMUS

**{¶ 26}** Relator, Waste Management of Ohio, brings this original action seeking a writ of mandamus ordering respondent, the Industrial Commission of Ohio, to vacate its order exercising continuing jurisdiction and awarding loss-of-use-benefits to respondents Sabrina Gelhausen ("Sabrina") and Taylor Alloway in addition to the death benefits already payable to Sabrina based upon the death of her father, Travis Gelhausen ("Gelhausen").

**{¶ 27}** The disputed issue in this case was whether the decedent survived the accident that took his life long enough to support a loss-of-use award for complete loss of

use of decedent's upper and lower extremities due to a severe neck injury sustained in the accident.

Findings of Fact:

{¶ 28} 1. Gelhausen sustained fatal injuries in the course and scope of his employment with Waste Management as a roll-off truck driver. While driving the vehicle on October 18, 2017 in the vicinity of Gates Mills, Ohio at approximately 11:18 a.m., he approached a stop sign on the terminating leg of a T-intersection, failed to stop, and attempted to make a right turn at a speed that caused the truck to overturn and slide into a tree. (Stip. at 24.) Witnesses at the scene found Gelhausen trapped in the cab and only partially visible. Emergency personnel arrived at the scene and found Gelhausen unresponsive. Emergency personnel required special equipment to extricate Gelhausen from the truck, which was accomplished at 12:16 p.m., and he was pronounced dead at 12:18 p.m. by telephone communication with an emergency room physician. (Stip. at 24.)

{¶ 29} 2. Waste Management is a self-insured employer in Ohio's Workers' Compensation system.

{¶ 30} 3. Gelhausen's claim was allowed and payment of death benefits began to Gelhausen's dependent daughter Sabrina. (Stip. at 38.) Alloway is Sabrina's mother; Gelhausen and Alloway were not married.

{¶ 31} 4. On May 2, 2018, Alloway, on behalf of Sabrina, filed a motion requesting payment of scheduled loss awards pursuant to R.C. 4123.57 for Gelhausen's total loss of use of the following body parts: right arm, left arm, right leg, left leg, both eyes, and bilateral hearing loss.

{¶ 32} 5. The loss-of-use motion was heard before a district hearing officer ("DHO") on August 20, 2018. The claimants dismissed the aspect of the motion requesting an award for bilateral hearing loss.

{¶ 33} 6. In support of the motion, the claimants submitted the affidavit of a witness to the accident, Jolene Szapowal, who attested as follows:

> 1) I am a resident of Geauga County, Ohio with a date of birth of January 20, 1979 and a mailing address of 11117 Chillicothe Road, Chesterland, Ohio 44026.
>
> 2) I am a witness to a motor vehicle collision that occurred on October 18, 2017 at the intersection of Bringham Road

and Chagrin River Road, located in Gates Mills, Cuyahoga County, Ohio.

3) I was traveling behind a Waste Management garbage truck driven by Travis Gelhausen. We were traveling westbound on Bringham Road when the garbage truck attempted a right hand turn on Chagrin River Road, when the garbage truck crashed.

4) After witnessing the crash, I parked my vehicle and attempted to administer aid to Mr. Gelhausen, the driver of the garbage truck.

5) When I approached the garbage truck I could see Mr. Gelhausen from his ribs to his knees and could see that he was still breathing.

6) At no point in time that I was with Mr. Gelhausen was he able to move his arms or legs.

7) Mr. Gelhausen continued breathing for approximately three minutes while I rubbed his leg in an effort to comfort him.

8) Mr. Gelhausen ultimately expired in my presence as I witnessed his body seize and he stopped breathing.

(Stip. at 49.)

{¶ 34} 7. The claimants submitted a file review prepared by Donato Borrillo, M.D., dated July 3, 2018. (Stip. at 55.) Based largely upon the Szapowal affidavit, Dr. Borrillo concluded that Gelhausen had survived the accident for a brief period of time and, based upon autopsy findings, would have sustained permanent loss of use of his upper and lower extremities and both eyes. Dr. Borrillo also conclude that the "brief period of breathing" witnessed by Szapowal was "consistent with still being alive, as [Gelhausen's] autopsy did not reveal a decapitation or crush injury of the head." (Stip. at 56.) Dr. Borrillo concluded that the loss of functional use of extremities would have been permanent based upon injuries to the cervical spine.

{¶ 35} 8. Amanda Spencer, D.O., of the Cuyahoga County Medical Examiner's Office, prepared an autopsy report dated March 15, 2018. (Stip. at 45.) In addition to evidence of postmortem organ donation, including the eyes, heart, and long bones of the

legs, Dr. Spencer noted injuries from the accident including puncture wounds to the chest, a hemorrhagic subluxation of the atlanto-axial vertebrae, and hemorrhagic fracture in the superior aspect of the C4 vertebral body with overlying prevertebral fascia hemorrhage. Dr. Spencer further noted that the skull was intact.  (Stip. at 42-43.)

{¶ 36} 9.  Waste Management obtained the report of Paul T. Hogya, M.D., who opined that the breathing observed by Szapowal was "agonal respiration" which was not "adequate respiration to sustain oxygenation."  (Stip. at 52.)  Dr. Hogya discounted Szapowal's observations as nonmedical evidence from a lay witness and concluded that there was insufficient evidence to prove that Gelhausen survived the accident with complete loss of use of extremities and eyes.  " At no time would Mr. Gelhausen have been conscious with these actual injuries to even appreciate any alleged loss of use of his right or left arm. Traumatic atlanto-axial subluxation may be associated with varying degrees of upper extremity paresis, but not all individuals that survive traumatic atlanto-axial subluxation have complete loss of use of the upper extremities."  (Stip. at 52.)  Dr. Hogya repeated these conclusions regarding Gelhausen's loss of use of his lower extremities.  Dr. Hogya described agonal respirations as "more of an automatic response of the last remnants of the brainstem," which would be confused by laypersons as ordinary respirations.  (Stip. at 52.)

{¶ 37} 10.  Drs. Hogya and Borrillo reviewed each other's opinions and produced addenda in which each adhered to his prior opinion.  Dr. Hogya restated his view that "whether or not [Gelhausen] is considered to have been 'alive' for three minutes or less, there was no conscious ability for him to recognize or appropriate a total loss of use of the upper and lower extremities and/or vision."  (Stip. at 60.)  In his addendum, Dr. Borrillo observed that while Dr. Hogya acknowledged the observation by Szapowal, he discounted its value.  Dr. Borrillo stated, "[i]n my medical opinion, a layperson can recognize the act of breathing.  Mr. Gelhausen's breathing was *not* shallow and *not* in need of auscultation with a stethoscope, rather it is characterized as audible and characterized by Dr. Hogya as agonal."  (Emphasis sic.)  (Stip. at 62.)  Dr. Borrillo conceded that agonal breathing can be an indicator of impending death, but that this did not change the fact that Gelhausen was alive and breathing immediately after the accident.  (Stip. at 63.)

{¶ 38} 11. The DHO issued an order mailed August 24, 2018 denying the claimants' loss-of-use awards on the basis that Gelhausen had not survived the accident for a discernible period of time. (Stip. at 2.) The DHO specifically found that Szapowal's affidavit was insufficient to establish such survival.

{¶ 39} 12. The claimants filed an appeal and the matter was heard before a staff hearing officer ("SHO") on October 1, 2018. Relying on Dr. Hogya's report and again discounting Szapowal's observations, the SHO agreed with the DHO that loss of use was not established for the claim.

{¶ 40} 13. The claimants filed a further appeal to the commission, which was initially refused in an order mailed November 1, 2018. (Stip. at 8.) Claimants then filed a motion for reconsideration and the commission entered an interlocutory order mailed December 1, 2018, finding that the matter warranted possible continuing jurisdiction based upon the alleged presence of a clear mistake of fact and law. (Stip. at 11.)

{¶ 41} 14. The full commission held a hearing on February 5, 2019. (Stip. at 13.) The commission mailed an order on March 27, 2019 with two commissioners voting to grant reconsideration and a third voting against. (Stip. at 15.) The majority found a clear error of law in the SHO's application of controlling the Supreme Court of Ohio's case law. The commission accordingly issued an order relying on Dr. Borrillo's report and Szapowal's affidavit to award scheduled loss of awards pursuant to R.C. 4123.57(B) for loss of use of the left arm, right arm, left leg, and right leg, but denying loss of use of the eyes. (Stip. at 14.)

{¶ 42} 15. Waste Management filed its complaint in mandamus with this court on July 17, 2019.

Discussion and Conclusions of Law:

{¶ 43} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record

contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as factfinder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 44} Waste Management first asserts that the commission could not invoke continuing jurisdiction in the matter to set aside the SHO's order. The commission may invoke continuing jurisdiction over a prior order under R.C. 4123.52(A) when the claimant demonstrates new and changed circumstances, fraud, a clear mistake of fact, or a clear mistake of law. *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454 (1998). "The presence of one of these prerequisites must be clearly articulated in any commission order seeking to exercise reconsideration jurisdiction" and the error must be both "identified and explained." *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990, ¶ 15.

{¶ 45} The clear mistake of fact to support continuing jurisdiction must be more than a legitimate disagreement as to the evidence, but a factual finding in the SHO's order that is "not supported by the record." *State ex rel. Arnett v. Indus. Comm.*, 10th Dist. No. 11AP-238, 2012-Ohio-4903. Similarly, a clear mistake of law exists in the case when the hearing officer applies the wrong law to the facts in the administrative record. *State ex rel. McNea v. Indus. Comm.*, 131 Ohio St.3d 408, 2012-Ohio-1296, ¶ 10. When the commission decides to exercise continuing jurisdiction and vacate a hearing officer's order, it will re-examine all aspects of the claim. *State ex rel. Sheppard v. Indus. Comm.*, 139 Ohio St.3d 223, 2014-Ohio-1904, ¶ 24.

{¶ 46} The commission in this case could conclude that there was a clear mistake of law in the SHO's order. The commission found that the SHO had failed to properly apply *State ex rel. Moorehead v. Indus. Comm.*, 112 Ohio St.3d 27, 2006-Ohio-6364, which remains the leading case from the Supreme Court on loss-of-use benefits in cases when death ensues rapidly after injury. In *Moorehead*, the decedent fell head-first onto a concrete floor while working on a raised platform, suffering severe spinal cord and other injuries. The unrebutted medical evidence established that the injuries would have rendered the decedent quadriplegic. The decedent never regained consciousness and died

approximately 90 minutes after the fall. When the decedent's widow applied for death benefits and scheduled loss compensation based on the loss of use of both arms and legs, the commission denied the application for scheduled loss compensation on the basis that the decedent could not have consciously perceived and experienced the hardship caused by the loss of use in the period between injury and death. The Supreme Court disagreed with this rationale and issued a writ ordering the commission to award the loss-of-use benefits, stating as follows:

> Similarly, there is no language in R.C. 4123.57(B) requiring that an injured worker be consciously aware of his paralysis in order to qualify for scheduled loss benefits. * * *

> This court should not graft duration-of-survival or cognizance requirements to R.C. 4123.57(B), because the statute has no text imposing them. * * *

> The appellant proffered medical evidence establishing that William Moorehead sustained the physical loss of use of his limbs as a result of his fall. Consciousness of that loss during an extended period of survival is not required by R.C. 4123.57(B), and the commission therefore incorrectly applied the statute when it denied the appellant's application on that basis.

*Moorehead* at ¶ 16-20.

{¶ 47} In the present case, the SHO appeared to rely on Dr. Hogya's opinion that Gelhausen had "no conscious ability for him to recognize or appropriate a total loss of use." (Stip. at 60.) The commission concluded that this was a clear mistake of law given *Moorehead*'s unequivocal holding that there is no "cognizance requirement" under R.C. 4123.57(B). *Moorehead* at ¶ 19. Once the commission accepted continuing jurisdiction to correct this clear error of law, the commission could re-examine all aspects of the claim, and form its own conclusions regarding the weight of evidence. *Sheppard*, *supra,* at ¶ 24. Confronted with the conflict between Szapowal's affidavit and Dr. Borrillo's report on one hand, and Dr. Hogya's conclusion that Szapowal had observed only agonal respirations, the commission could conclude that the evidence supported a finding that Gelhausen survived the accident for a discernable period with injuries that would have rendered him a quadriplegic.

{¶ 48} Waste Management relies upon this court's refusal to issue a writ on similar facts in *State ex rel. Sagraves v. Indus. Comm.*, 10th Dist. No. 10AP-1030, 2012-Ohio-1010. In that case, the commission had concluded that the decedent had not survived his accident for an appreciable time supporting a loss-of-use award, and this court found no abuse of discretion. As this court has frequently been compelled to note, the fact that the commission can reach different conclusions in similar cases on comparable facts does not mean that an abuse of discretion has occurred sufficient to support a writ of mandamus. The facts of each claim are reviewed independently by the commission, and particularly when addressed in the context of a mandamus action, the commission's conclusions when weighing evidence are reviewed under a deferential standard as outlined above.

{¶ 49} Similarly, in the recent case of *State ex rel. Koepf v. Indus. Comm.*, 10th Dist. No. 18AP-753, 2019-Ohio-3789, ¶ 11-12, 14, this court refused to issue a writ to vacate the commission's order denying loss of use awards. "In cases where the claimant has passed away, this court has repeatedly looked to whether the evidence supports that, but for the decedent's death, there was a loss of use that would have been permanent. * * * The commission's denial of the claim for total loss of use was based on some evidence. * * * Finally, we reject relator's argument that the magistrate should have accepted the report of Dr. Borrillo as establishing that decedent had sustained a total loss of use of his eyes, ears, arms and legs. The commission 'need only cite evidence in support of its decision, and the presence of contrary evidence is immaterial.' " *State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 2011-Ohio-6036, ¶ 11. Because the medical records themselves and the report of [respondent's medical expert] each independently constitutes 'some evidence' upon which the commission relied, this court must defer to the determination of the commission." *Koepf* at ¶ 14.

{¶ 50} *Koepf* illustrates that this court will defer to the commission in loss-of-use cases where the report of the commission is first, consistent with the law as set forth by the Supreme Court in *Moorehead*, and second, supported by some evidence. In the present case, the commission had before it Szapowal's clear affidavit based on first-hand observation that Gelhausen was breathing in some manner for approximately three minutes, and Dr. Borrillo's report interpreting that testimony and the other medical evidence in the case. Dr. Hogya's report reaching contrary conclusions on the same

evidence does not negate the evidence upon which the commission chose to rely. Ultimately, both doctors agreed that the breathing, whether characterized as agonal respirations or not, were a sign of impending death, which by definition would precede actual death. On this basis, the commission could conclude both that the SHO had committed a clear error of law in failing to apply *Moorehead*, and that Gelhausen had survived the accident for the requisite amount of time to support loss of use under R.C. 4123.57(B).

{¶ 51} Finally, Waste Management asserts that the commission erred in awarding 850 weeks of scheduled loss benefits. The magistrate notes the commission's ultimate order in this case does not specify the duration of the loss-of-use award, despite the fact that the parties argued the matter before the commission. (Stip. at 179-80.) Pursuant to R.C. 4123.57(B), loss of a leg is to be paid for 200 weeks, and loss of an arm is to be paid for 225 weeks. In *State ex rel. Arberia, LLC v. Indus. Comm.*, 10th Dist. No. 13AP-1024, 2014-Ohio-5351, this court addressed the amounts payable under loss-of-use compensation to a claimant's survivor or dependent where the claimant died shortly after suffering injury. In *Arberia*, the court noted that R.C. 4123.57(B) provides as follows:

> When an award under this division has been made prior to the death of an employee all unpaid installments accrued or to accrue under the provisions of the award shall be payable to the surviving spouse, or if there is no surviving spouse, to the dependent children of the employee and if there are no such children, then to such dependents as the administrator determines.
>
> When an employee has sustained the loss of a member by severance, but no award has been made on account thereof prior to the employee's death, the administrator shall make an award [to survivors or dependents].

*Id.* at ¶ 11.

{¶ 52} This court in *Arberia* rejected first, strict application of the terms "severance" in R.C. 4123.57(B) to mean actual removal of the limb, noting that paralysis was the equivalent of severance as interpreted by the Supreme Court in *Moorehead* and *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166. This court in *Arberia* then determined that loss of use would not be limited to the period of survival, even when the decedent had lived for only a brief period after the accident,

because Ohio Adm.Code 4123-3-37 allows for lump-sum advancement of awards, and where the decedent is entitled to apply for scheduled loss benefits under R.C. 4123.57(B) before death, the potential for lump-sum award means that the full amount of compensation may be paid no matter how brief the period of survival. *Arberia* at ¶ 18-20. As long as the lump-sum award does not exceed the compensation that the decedent *might* have received, it is awardable to the decedent's dependents. *Id.*

{¶ **53**} In summary, the magistrate concludes that the commission did not abuse its discretion in exercising continuing jurisdiction and that there is some evidence to support the loss-of-use award for Gelhausen's injuries. The commission also did not abuse its discretion in awarding 850 weeks of compensation pursuant to R.C. 4123.57(B) and Ohio Adm.Code 4123-3-37. It is the magistrate's decision and recommendation that the court deny the request writ of mandamus.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).